BRUM and others *v.* MERCHANTS' MUTUAL INS. Co.*

MOTT and others *v.* SUN MUTUAL INS. Co.*

*(Circuit Court, E. D. Louisiana. 1883.)*

CORPORATIONS.

    A new corporation which takes, as owner, all the property and assets of an old corporation, (which is dissolved without providing for all its debts,) must pay the debts of the old corporation, at least to the amount of the assets converted.

(Ten cases united in one transcript of appeal, by consent, and argued and decided as one case.)

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

The only contest in this case is between libelants and the Home Insurance Company; all the other defendants having settled.

The libel in each case alleges that libelants were respectively employed on board of the steam-tug Tyler, in the capacities stated; and at the dates stated there were salvage services rendered by said Tyler and her crew to various vessels in distress, as follows:

October 25, 1872, to bark Brookwan.
March 30, 1872, to steam-ship City of Galveston.
April 16, 1872, to bark Moneta.
November 13, 1872, to steam-ship Darien.

For which there was respectively paid by the owners, agents, and representatives of said vessels and cargo to the Harbor Protection Company, of New Orleans, the owner of said Tyler, as follows:

| | |
|---|---:|
| Steam-ship City of Galveston, | $ 8,896 00 |
| Bark Moneta, | 13,500 00 |
| Steam-ship Darien, | 11,528 15 |
| Bark Brookwan, | 8,164 85 |

The libels further allege that said Harbor Protection Company was, at the time said services were rendered, and said sums respectively paid therefor, an unincorporated company, and a commercial partnership, and the members thereof were certain insurance companies named in the libels, and among them the Home Mutual Insurance Company, which, it was alleged, is now (when the libel was filed, April 23, 1878) consolidated with the Home Insurance Company.

The libels further alleged that after this salvage money was paid to said company it was invested in city and state bonds, which the company, while it was insolvent, divided among said insurance companies in December, 1873; and that said company refused, and had refused to give libelants any part of said salvage money or bonds, of which they claimed their *pro rata* of one-half, or pay them anything on account of said services by them rendered.

The suit is for libelants' proportion of said salvage money, respectively.

The Home Insurance Company, which was alleged to be consolidated with the Home Mutual Insurance Company, and its predecessor, was cited.

The material allegation of the answer is as follows:

"* * * And the truth is that the Home Insurance Company was not in any manner interested in the Harbor Protection Company, and the Home Mutual Insurance Company was not consolidated with the Home Insurance Company, the respondent; and, further, that the Home Insurance Company is

an entirely new organization, and *did not receive the assets of the Home Mutual Insurance Company*, and is not bound for any liability incurred by the Home Mutual Insurance Company."

About the rendition of the services—that they were salvage services; that they were paid for as such to the Harbor Protection Company—there is no dispute. Nor can there be any dispute as to the Harbor Protection Company being an incorporated company, and a partnership in which the insurance companies were the partners. This has been held by both Judges BILLINGS and WOODS, in other cases, and may be considered as settled. Those judges found that an attempt had been made to form a corporation under the general law of the state of Louisiana; and a copy of what was thought to be a charter is given from pages 169 to 179. This document, which was an attempt at making a charter, failed to become such, because it did not provide means for winding up the affairs of the company at the termination of its existence, and which was an *absolutely* necessary provision under the law relative to corporations. See Rev. St. La. § 685. This section declares: "Every charter of incorporation shall contain—*First*, * * *; *second*, * * *; *third*, * * *; *fourth*, * * *; *fifth*, * * * the mode of liquidation at the termination of the charter." This defect, the above judges held, under the authority of *Field* v. *Cooks*, 16 La. Ann. 154, and the *Workingmen's Bank* v. *Converse*, 29 La. Ann. 369, was an absolute prerequisite condition, which struck the instrument with nullity, as a charter, and made the concern an ordinary partnership; each of the companies, or partners, composing the same being liable for its virile share of the debts of the company. If this question were open for review there could be no doubt about the correctness of the decision. It is purely one of Louisiana law; and in courts of the United States is to be governed by the decisions of the highest courts of the state.

The question in this case turns on the fact as to whether the Home Insurance Company was consolidated with the present Home Insurance Company, or whether the present Home Insurance Company received the assets of the Home Mutual Insurance Company, and is bound for any of the liabilities of that company.

*Richard De Gay*, for libelants.

*Charles B. Singleton* and *Richard H. Browne*, for defendants.

PARDEE, J. If it (the Home Insurance Company) is bound for the liabilities of the old Home Mutual Insurance Company, then it owes this debt to the libelants, for there is no doubt the partnership styled "The Harbor Protection Company" collected the salvage money,

which, under former decisions of this court, belonged to the libelants, and that the Home Mutual Insurance Company was a partner in the Harbor Protection Company, and as such partner was liable for its virile share of the debts of said company.

The evidence with regard to the liquidation of the Home Mutual and the organization of the Home shows that the real fact, stripped of the forms with which the parties surrounded it, was that the assets, business, good-will, and stock in trade—everything which could be relied upon belonging to the Home Mutual to pay and satisfy its outstanding liabilities—went into and constituted the capital and assets of the new Home. Calculations and arrangements were made as to the known liabilities of the old company, and some stockholders in the old company were allowed to withdraw their *pro rata* value of stock in cash; but the fact remains that the capital of the new company was exclusively made up of what was left of the assets of the old company. I have no doubt that everything was intended and carrried out in the best of faith, and I am inclined to think that if the debts due libelants for salvage moneys had been known that they would have been provided for. As the Home took all the property of the old company, leaving nothing to pay the amounts due libelants, and as it took them, not as creditors, but as owner, it seems clear to me that it must pay the debts of the old company, at least to the amount of the assets converted. The claim of libelants—being in the nature of one for money had and received—would not be prescribed under the laws of Louisiana, where the obligation was created, and is one that ought not to be considered stale in an admiralty court.

The district judge held that the libelants were entitled to recover, and I concur in his judgment in this case. In the view I take of the facts, I do not find it necessary to pursue the line of reasoning showing the liability of the defendants, because of the distribution made by the Harbor Protection Company to the Home Mutual, and the responsibility of the Home because of the identity of its officers, stockholders, etc., with the old Home Mutual.

Let a decree be entered in favor of libelants in the same terms as that of the district court, and for all costs.