## Chicago, Indiana and Southern Railroad Company *v.* Taylor.

[No. 22,440. Filed March 5, 1915. Rehearing denied
May 12, 1915.]

1. APPEAL.—*Ruling on Demurrers.*—*Statutes.*—Reversible error
can not be predicated on the overruling of a demurrer for mis-
joinder of causes of action, under §346 Burns 1914, §341 R. S.
1881; and, under §350 Burns 1914, §345 R. S. 1881, error, if any,
in overruling a demurrer on the ground that the complaint does
not state facts sufficient, is not cause for reversal, where, from a
consideration of the facts found, and the conclusions of law, it is
apparent that the right result has been reached. p. 241.

2. CORPORATIONS.—*Taking Over Property of Another Corporation.*
—*Liability.*—Where a new corporation takes over, as owner, all
the property and assets of another corporation without compen-
sation therefor other than the issuance of stock in the new or-
ganization, such new organization will be held liable in equity for
the unpaid obligations of the old company, at least to the amount
of the assets converted, though it might not be answerable if it
pays the full value of the property acquired. p. 245.

3. CORPORATIONS.—*Taking Over Property of Another Corporation.*
—*Liability.*—Where a railroad company, through negotiations,
transfers, and consolidation with a company in which plaintiff
was interested, finally acquired all the property and assets of the
latter company without cost and without making provision for the
payment of claims outstanding against it, equity would not per-
mit the defendant to retain the property without paying such
debts, and plaintiff, who had located the line on which the road
was built, and whose surveys, maps and plats were used by de-
fendant, and were valuable to the old corporation, had such an
interest in its property and assets as to entitle him to compensa-
tion therefor. p. 245.

4. APPEAL.— *Review.*— *Findings.*— *Amendment.*— The trial court
may amend its special finding of facts during the term in which
judgment was rendered; hence it was not error to amend the
findings to supply an omission which, in view of the evidence, was
inadvertent, although a motion for new trial and for *venire de
novo* had each been overruled. p. 246.

From Jasper Circuit Court; *Charles W. Hanley,* Judge.

Action by Bayard Taylor against the Chicago, Indiana
and Southern Railroad Company and others. From a judg-
ment for plaintiff, the defendants appeal. *Affirmed.*

*Jesse E. Wilson, William Darroch, Robert J. Corey* and *Bertrand Walker,* for appellants.

*Otto Gresham* and *T. B. Cunningham,* for appellee.

SPENCER, J.—This is an appeal from a judgment rendered against the Chicago, Indiana and Southern Railroad Company, hereinafter referred to as appellant, in an action instituted by appellee to recover his interest in certain property which, at the time of suit, had passed into the ownership and control of said company. The complaint was in one paragraph to which each of the defendants addressed a separate demurrer. These demurrers were overruled and the alleged error in such ruling as to the demurrer filed by appellant company is the first question presented for our consideration. Said demurrer challenged the complaint on two grounds: (1) that it did not state facts sufficient to constitute a cause of action, and (2) that several causes of action were improperly joined therein.

The code expressly provides that "No judgment shall ever be reversed for any error committed in sustaining or overruling a demurrer for misjoinder of causes of

1. action." §346 Burns 1914, §341 R. S. 1881. It also provides that "no objection taken by demurrer, and overruled, shall be sufficient to reverse the judgment, if it appear from the whole record that the merits of the cause have been fairly determined." §350 Burns 1914, §345 R. S. 1881. Substantially the same questions raised by the ruling on the demurrer for want of facts are presented by appellant's exceptions to the conclusions of law based on a special finding of facts made at the request of defendants. For the purpose, therefore, of determining whether the case has been fairly tried and the right result reached, we pass to a consideration of said exceptions to the conclusions of law and to appellant's motion for a new trial.

The special finding is lengthy and contains many facts which are evidentiary in character and which we deem it

unnecessary to set out in this opinion. It appears, however, that in 1899, appellee, having had experience in surveying and locating railroads, conceived the idea of building a road from Terre Haute, Indiana, to West Lebanon, Indiana, and thence reach Chicago by a connecting line. To that end he organized and incorporated the Covington and Southern Railway Company and procured options on the towpath of the abandoned Wabash and Erie canals between Terre Haute and Covington, Indiana, a distance of fourteen miles. In September, 1900, the name of the Covington and Southern Railway Company was changed to the Chicago, Covington and Southern Railway Company and the northern terminus of said road was changed to Hammond, Indiana, the purpose and plan being to reach Chicago by a connecting line from that point. Certain surveys were made by appellee and others with a view of locating said railroad and expenses were incurred therein, some of which were paid by appellee personally. In March, 1911, defendants Kent and McCray, learning of the operations of appellee by and through the Chicago, Covington and Southern Railway Company, sought a meeting with him and at said meeting requested appellee and those associated with him in said railroad to so change the route thereof that it would pass through the town of Kentland in Newton County, Indiana. In March, 1902, appellee, at his own expense, went to New York and secured a tentative contract from one Albert M. Lawrence to finance the construction of said proposed line and through said Lawrence, appellee and the Chicago, Covington and Southern Railway Company, secured the services of one Warren H. Loss, civil engineer and expert on the location and construction of railroads, to view and report on the feasibility of a line of railroad extending from Terre Haute through Kentland and reaching Chicago either by way of Hammond, Indiana, or Chicago Heights, Illinois, which proposed route was already partly surveyed as aforesaid. Said Loss made an inspection of said line,

accompanied and aided by appellee, and prepared a written report on the feasibility thereof.

The special finding further sets out a history of three other railroad corporations, viz., the Indiana Harbor Company of Indiana, the Indiana Harbor Company of New Jersey, and the Indiana Harbor Railroad Company, through which one C. W. Hotchkiss and others proposed to build a line of railroad which should serve in part substantially the same territory to be traversed by the railroad projected by appellee. On January 17, 1903, appellee joined Kent and McCray in a written agreement wherein it was proposed that a new corporation should be organized by them to construct a railroad through the territory which the Chicago, Covington and Southern Railway was expected to serve. It was further agreed that those persons who held stock in the old company should be settled with in the best manner possible and that all moneys required for this settlement, as well as for the settlement of certain debts outstanding against said company, should be deducted from the gross amount realized from the project in case it was disposed of; that the balance thereof should be distributed in equal parts to Kent, McCray and appellee. In accordance with this agreement the Chicago, Terre Haute and Southern Railway Company was incorporated on January 28, 1903, and subsequently had transferred to it, at the instance of Kent, McCray and appellee, all of the assets of the Chicago, Covington and Southern Railway Company, including the maps, plats, surveys, notes, profiles, estimates, reports, options and right of way contracts. On May 5, 1903, Kent and McCray informed appellee that they were going to sell out the rights, properties and assets of the Chicago, Terre Haute and Southern Railway Company. Appellee's objection to this proposal was met with an assurance that he would be treated with fairness in said sale and such negotiations followed as resulted in the transfer to the Indiana Harbor Company of Indiana of all of the prop-

erty of the Chicago, Terre Haute and Southern Railway Company, the same being of the value of $10,000. The Indiana Harbor Company, however, failed to carry out its agreement to build the line as projected and on May 5, 1905, it was formally released from said agreement by the Chicago, Terre Haute and Southern Railway Company. The property previously received by it was turned over to C. W. Hotchkiss and those associated with him in the Indiana Harbor Railroad Company, which company eventually constructed a line of railroad from Indiana Harbor, Indiana, to Danville, Illinois. The court further found that a part of said railroad was built on substantially the same line on which the Chicago, Terre Haute and Southern Railway Company had located its road and that "in so locating and constructing said line of railroad, the surveys, maps, plats and profiles that had been the property of the Chicago, Terre Haute and Southern Railway Company were of use and valuable to the Indiana Harbor Railroad Company," and that the surveys made by appellee and those associated with him were made the basis of all subsequent surveys made by the Indiana Harbor Railroad Company in constructing said line. On April 6, 1906, the Indiana Harbor Railroad Company and the Indiana, Illinois and Iowa Railroad Company, a corporation organized and existing under and by virtue of the laws of the States of Indiana and Illinois, were duly and legally consolidated as one corporation under the name of the Chicago, Indiana and Southern Railroad Company, the present appellant.

The court further found that before bringing this suit appellee requested Kent and McCray, as holders of the majority of the stock of the Chicago, Terre Haute and Southern Railway Company and as controllers of its board of directors, to cause said company to bring suit against the Indiana Harbor Company for the value of the property taken by it, all of which said Kent and McCray refused to do; that appellee has never received any pay for his

interest in the property and assets of the Chicago, Terre Haute and Southern Railway Company; also that neither the Chicago, Terre Haute and Southern Railway Company nor the defendants Kent and McCray received anything of value for the property of said Chicago, Terre Haute and Southern Railway Company and of its predecessors. On its special finding of facts the court concluded that the law is with appellee and that he is entitled to recover from appellant company the sum of $10,000.

This is a proceeding in equity and it was the duty of the trial court, as it is the duty of this court, to examine care-

2. fully into all the negotiations through which appellant, as the successor of the Indiana Harbor Railroad Company, acquired the property of the Chicago, Terre Haute and Southern Railway Company and

3. to determine with what prior claims, if any, such property was impressed. It has been held that a corporation which takes, as owner, all the property and assets of another corporation, which thus practically ceases to exist except as a paper organization, is liable in equity for the obligations of the old company, at least to the amount of the assets converted. *Brum* v. *Merchants Mut. Ins. Co.* (1883), 16 Fed. 140; *Harrison* v. *Union Pac. R. Co.* (1882), 13 Fed. 522; *National Bank* v. *Texas Invest. Co.* (1889), 74 Tex. 421, 12 S. W. 101. If the new corporation pays the full value of the property acquired, then possibly it might not be answerable, but where the property is taken without compensation to the original company other than the issuance to it of stock in the new organization, the latter should be charged with such unpaid claims as exist against the property taken, at least in an amount equal to the value of such property. In the case of *Hibernia Ins. Co.* v. *St. Louis, etc., Trans. Co.* (1882), 13 Fed. 516, it was held that equity will not permit the stockholders in one corporation to organize another and transfer all the corporate property of the former to the latter, without pay-

ing the corporate debts. In the course of its opinion the court at page 519 uses this language: "We are not prepared to say that it would make any difference if the members of the new company were none of them interested in the old. The thing which we pronounce unconscionable is an arrangement by which one corporation takes from another all its property, deprives it of the means of paying its debts, enables it to dissolve its corporate existence and place itself practically beyond the reach of creditors, and this without assuming its liabilities." This language is applicable here. Stripped of all the negotiations and transfers which preceded the final appropriation of the property in question by appellant's predecessor, the fact remains that through such appropriation appellant acquired all the assets and property of the Chicago, Terre Haute and Southern Railway Company which could be relied on to satisfy its outstanding liabilities. Furthermore, such property was acquired without cost to appellant or its predecessor in title without proper provision made for the meeting of prior claims thereto. Appellee's interest in such property was clearly sufficient to entitle him to compensation therefor and the trial court was justified in its conclusions of law.

Appellant earnestly contends that the trial court erred in amending its special finding of facts after said special finding and the conclusions of law thereon had been filed and at a subsequent term of court, especially when such amendment was made after appellant's successive motions for a new trial, for a *venire de novo,* for judgment on the findings and in arrest of judgment had each been overruled and exceptions taken. In the original finding of facts there was no finding as to the value of the property taken by the Indiana Harbor Company and the amendment as made merely supplied such omission. It has frequently been held that the court may amend its special finding of facts during the term in which the judgment was rendered and after overruling a motion for a new trial. *Jones* v. *Mayne*

Chicago, etc., R. Co. *v.* Taylor—183 Ind. 240.

(1900), 154 Ind. 400, 403; *Royse* v. *Bourne* (1897), 149 Ind. 187, 192; *Pitser* v. *McCreery* (1909), 172 Ind. 663, 665; *Marion Mfg. Co.* v. *Harding* (1900), 155 Ind. 648, 651. In the case last cited this court said: ''The cause was *in fieri,* and the court was authorized to amend the finding so that it should include all the material facts that the court believed to have been proved.'' And in the case of *Thompson* v. *Connecticut Mut. Life Ins. Co.* (1894), 139 Ind. 325, 356, after an extended discussion of the question, the court said: ''We are, therefore, of opinion that the trial judge should, in all cases be permitted to amend his special findings and conclusions of law at any time before final judgment and during the period within which a bill of exceptions containing the evidence may be filed.'' See also: *Whitcomb* v. *Stringer* (1903), 160 Ind. 82, 91; *Warrick* v. *Spry* (1912), 49 Ind. App. 327.

The amendment in the case at bar did not serve to change a finding previously made but rather to supply an omission which, in view of the evidence, must have been inadvertent. Clearly the action of the trial court in no way affected the merits of the case and, at most, was not reversible error.

The several rulings challenged by appellant's motion for a new trial have been carefully examined but we can not agree that they contain cause for reversal. The record as a whole is sufficient to show that the merits of the case have been fairly tried and determined and the judgment of the lower court should be affirmed. Judgment affirmed.

NOTE.—Reported in 108 N. E. 1. As to power of corporations to deal in shares of other corporations, see 28 Am. Rep. 15; 36 Am. St. 134. As to the liability of a corporation purchasing the property of another corporation for the debts of the latter, see Ann. Cas. 1913 E 1044. See, also, under (1) 31 Cyc. 358; (2) 10 Cyc. 308, 306; (3) 10 Cyc. 308; (4) 38 Cyc. 1987. As to the effect of consolidation, merger, or absorption of corporation, on its unsecured liabilities in absence of statutory contract provision relative thereto, see 11 L. R. A. (N. S.) 1119; 32 L. R. A. (N. S.) 616; 47 L. R. A. (N. S.) 1058.