**RIEGEL v. PLANTERS STATE BANK et al.**

No. 11790—Opinion Filed March 11, 1924.

Rehearing Denied June 17, 1924.

**1. Banks and Banking—Merger and Consolidation of Banks—Liability of New Corporation for Old Debts.**

Where a banking corporation takes over all of the property of another banking corporation and assumes all of the known and disclosed liabilities of such corporation, and causes such other banking corporation to discontinue business by a voluntary liquidation, a subsisting indebtedness against such corporation may be asserted by an equitable proceeding against the new banking corporation, which has taken over all of the real assets, since to deny a direct suit would be to deny all remedy, and this equity can and will avoid.

**2. Same.**

Record examined, and held, that facts disclose that Planters State Bank is liable as a legal successor of Mountain Park State Bank, or that the transaction amounted to a merger or consolidation, by reason of which such Planters State Bank is liable.

**3. Same—Liability of Former Stockholders.**

Held, further, that record does not disclose facts sufficient to establish statutory liability against former stockholders of Mountain Park State Bank.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Kiowa County; Thomas A. Edwards, Judge.

Action by J. J. Riegel against Planters State Bank, Mountain Park State Bank, A. M. Trader, and A. W. Britton. Judgment for defendants and plaintiff appeals. Affirmed in part and reversed and remanded in part.

Rummons & Hughes, for plaintiff in error.

Geo. L. Zink, for defendants in error.

Opinion by LYONS, C. In this case the jury found in answer to a special interrogatory that O. B. Riegel, attorney at law, earned a fee in the sum of $250 for services performed by said attorney for the Mountain Park State Bank in the suit of Lewis Terry, Receiver, v. Mountain Park State Bank.

This action is maintained by the personal representative of said O. B. Riegel, an attorney at law, who was deceased prior to the filing of the cause in the district court. Suit was brought against the Planters State Bank, a corporation, and A. M. Trader and

A. V. Britton, who are the defendants in error in this cause.

The plaintiff seeks to recover against these defendants on the theory that the Mountain Park State Bank was merged and consolidated with the defendant Planters State Bank, and it is claimed that the Planters State Bank took over all of the assets of the Mountain Park State Bank and assumed charge and control of the banking business of the said bank, and consolidated the same with the banking business of the defendant Planters State Bank, and that the Planters State Bank then and thereby assumed the payment of all of the liabilities, debts, and obligations of the Mountain Park State Bank, including the indebtedness due by reason of the services of O. B. Riegel, attorney at law.

The defendants A. M. Trader and A. V. Britton are said to be liable by reason of the fact that they were stockholders in the Mountain Park State Bank, holding stock therein in excess of the sum of $500 par value, and it is claimed therefore that there is a statutory liability provided against them equal to the par value of the stock held by them, by reason of their stock ownership.

It is clear under the finding of the jury that the plaintiff has a valid debt which was owed by the Mountain Park State Bank to O. B. Riegel, an attorney at law, since deceased. The trial court held, however, that the indebtedness could not be asserted against the Planters State Bank, a corporation, or against A. M. Trader and A. V. Britton, as stockholders.

It must be noted that the basis of the claim against Trader and Britton is the statutory liability of a stockholder of a bank. We think the judgment of the trial court was correct as to Trader and Britton. The case of Dill v. Ebey, 27 Okla. 584, 112 Pac. 573, and the case of Blackert v. Lankford, 74 Oklahoma, 176 Pac. 532, are sufficient authority to sustain the judgment on the question of the individual liability of stockholders of a bank. In the Blackert Case, supra, the court cited with approval a decision of the Supreme Court of Minnesota in the case of N. W. Trust Company v. Bradbury, 117 Minn. 83, 134 N. W. 513, Ann. Cas. 1913D 69, as follows:

"The constitutional liability of stockholders in banking corporations was designed solely for the benefit of creditors, and constitutes a fund available only when the bank is insolvent and unable to meet its

obligations in full. The corporation itself has no authority over the fund, cannot compel its payment. nor by any act on its part release the stockholders therefrom. It amounts for all practical purposes to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet the payment of obligations of the corporation. It is limited to an amount equal to the par value of the stock held and owned by each stockholder, and exists in favor of the creditors collectively, not severally, and in proportion to the amount of their respective claims against the corporation."

We think, therefore, that under the rule of this court the plaintiff did not make a sufficient showing to disclose liability against Trader and Britton, and that the judgment of the trial court as to said defendants is correct.

The principal question in this case, and one which is not free from difficulty, is whether or not the Planters State Bank is liable for the indebtedness by reason of its transactions with the Mountain Park State Bank. The principles of law covering the transaction are settled. If the Planters State Bank acquired the assets of the Mountain Park State Bank by an unconditional sale, and paid value for such assets, then there is no liability. If, however, the transaction between the Mountain Park State Bank and the Planters State Bank is a consolidation or a merger, or if the Planters State Bank is a successor of the Mountain Park State Bank in a legal sense, then the Planters State Bank is liable for the indebtedness. It therefore becomes necessary to examine the facts to determine the legal effect of the transaction between these two banks. The only witness who testified at the trial in the lower court on this question was W. G. Capps, president of the defendant Planters State Bank:

"Q. Who were the stockholders of the Mountain Park State Bank? A. A. V. Britton, A. M. Trader, and I don't remember the others. Q. Mrs. Trader? A. Yes. Q. How much of the assets of the bank did they take over? A. Well they took over forty thousand—the equivalent of the deposits, whatever they were. or forty thousand. Q. How much money? A. Well, I think that their loans was probably about twenty-two or three thousand dollars, and the furniture and fixtures was about $2,100, and then the difference in cash. Q. You took over all the cash they had? A. Yes, sir. Q. You took all real estate also? A. No, sir. Q. You didn't take the banking house and fixtures? A. I took the fixtures. Q. Did the banking house belong to the Mountain Park State Bank or were they renting it? A. Renting it, I suppose. Q. But you took their fixtures and other stuff? A. Yes, and their fixtures. Q. Now what part of that—did any of the stockholders of the Mountain Park State Bank become stockholders in that transaction of the Planters State Bank? A. Well the—not by that transaction: some of them afterwards became stockholders: Q. Isn't it a fact, Mr. Capps, that as a member of that—as a part of that transaction you issued stock of the Planters State Bank to the stockholders of the Mountain Park State Bank in payment of the consideration for that transfer? A. Well, I don't know whether you would call it that or not, hardly, although of course they had money there and they took some stock in our bank. Q. They took stock for the money that was coming to them out of the transaction—who did that? A. Well, Mr. Trader. Q. Mrs. Trader? A. Mrs. Trader. Q. And the Brittons, did they take any stock? A. No, sir. Q. They took theirs in money? A. Yes, sir. Q. Now, when did the Mountain Park State Bank go into liquidation? A. Well, it was along—I think it was the latter part of 1914, I am not certain about the year. * * * Q. You assisted in the liquidation of the bank? A. Well to that extent of taking—paying off the depositors out of the notes and fixtures and assets that we took over. Q. As a matter of fact, Mr. Capps, you did not pay off the depositors at the time of the liquidation—you merely transferred their accounts to your bank and they became depositors in your bank? A. Yes. Q. As a matter of fact, some of those accounts haven't been paid yet? A. I could not say—probably some of them have been paid. Q. Probably some of them are still holding deposits in your bank? A. Well, that might be. Q. You merely took over his banking—you merely took over and transferred to the books of the Planters State Bank the accounts of the Mountain Park State Bank? A. Yes, sir. Q. Now, did you pay any debts of the Mountain Park State Bank, besides the deposits? A. No, sir, I don't remember that I did; we took over their stationery and fixtures but to the best of my recollection they had no other liabilities that I know of—I don't think they mentioned that to me; I don't remember of any current accounts. * * * Q. They didn't disclose any other liabilities? A. No, sir. Q. What part of the assets did the Mountain Park State Bank retain? A. Some notes—we didn't take over all the notes. Q. Now, isn't it a fact, Mr. Capps, that the only notes that they retained were those that you rejected as worthless? A. Yes, we took the notes that we thought were good."

It further appears that the Mountain Park State Bank at about the same time went through a process of voluntary liquida-

tion. It appears from the testimony of the witness Capps that the Planters State Bank "had to make arrangements and then liquidate the bank" that is, the Planters State Bank went through the transaction of taking over the Mountain Park State Bank and then liquidated it.

The certificate of liquidation contains a statement that the Mountain Park State Bank has paid its depositors in full and has no unpaid liabilities of any kind or nature. We think that it may be fairly concluded from the testimony that the Planters State Bank took over all of the real assets of the Mountain Park State Bank and then proceeded to liquidate the Mountain Park State Bank. The witness Capps says that no other liabilities of the Mountain Park State Bank, aside from the liability to depositors, were disclosed or discussed. The testimony reasonably discloses that the Planters State Bank took over everything of value which the Mountain Park State Bank had owned, assumed its liabilities, and proceeded to liquidate the Mountain Park State Bank.

We are unable to see under this situation how the defendant bank can escape the general rule of law which imposes liability when one corporation is merged and absorbed by another.

We are unable to agree that this transaction is a plain and unconditional sale, and we see no good reason why the ordinary rules of corporation law should not be applied in this case.

It is proper at this point to discuss the principles of law applicable:

(a) A voluntary dissolution of a solvent corporation gives no relief from liability upon existing contract, whether executed or executory, which must be satisfied before its assets can be diverted. Bowe v. Minnesota Milk Co. (Minn.) 47 N. W. 151; Musgrove v. Gray, 123 Ala. 376, 26 South. 643.

(b) Where an old company was legally dissolved shortly after the new company took over its property and before suit was brought, and such old company had no assets to distribute, a direct proceeding may be brought against the new company, since to deny a direct suit would be to deny all remedy and this equity can and will avoid. Curran v. Arkansas, 15 How. 304, 14 L. Ed. 705. See, also, Skirvin Operating Co. v. Southwestern Electric Co., 71 Okla. 25, 174 Pac. 1069, and Collinsville National Bank v. Esau, 74 Oklahoma, 176 Pac. 515, where the foregoing principles are recognized.

A clear statement of the rule applicable to this case is made in the case of Brum v. Merchants Mutual Insurance Co. (C. C.) 16 Fed. 140, where the court said:

"As the Home (Insurance Company) took over all the property of the old company, leaving nothing to pay the amounts due libelants, and as it took them, not as creditors, but as owner, it seems clear to me that it must pay the debts of the old company, at least to the amount of the assets converted."

It is true also that in this case there was no written contract, and that the showing as to the nature of the transaction is somewhat vague, and was necessarily established by the testimony of the defendant. The testimony of defendant's officer did not show a sale but a totally different relationship which amounted either to a merger or to a taking over by the new bank as a successor of the former bank.

The immediate liquidation of the old concern by the new concern, together with all of the other circumstances, clearly makes out a situation where in equity a creditor is entitled to recover from the new concern.

We quote the following paragraph from Thompson on Corporations (2d Ed.) section 6082, which is quoted with approval in the case of Skirvin Operating Co. v. Southwestern Electric Co., supra:

"Succeeding corporations are not infrequently held liable where there may not be strictly a consolidation. Generally, if a new corporation is organized, by the stockholders of an old concern, and received the property of the old, the creditors of the old corporation may proceed directly against the new. This rule is applied especially where such arrangement and the transfer of the property is made for the purpose of defrauding the creditors of the old company. Thus a corporation composed of substantially the same stockholders, receiving without consideration all the property, including a certain contract for the sale of goods, for the purpose and with the intent of defrauding the creditors of such former company, was held liable on a contract of the old company entered into before the transfer of the property. Where the consolidation results in terminating the existence of the constituent companies, and there is no agreement as to liabilities, the consolidated corporation will generally be entitled to all the property and will be answerable for all the liabilities of the old corporation. And, if the successor is technically a new corporation, and the old has actually ceased to

exist, and all its assets and franchises have passed to the new, and it is a mere continuation of the old, the liability continues. Neither law nor equity will permit one corporation to take all the property of another, deprive it of the means of paying its debts, enable it to dissolve its corporate existence, and place itself practically beyond the reach of creditors, without assuming its liabilities. In order to render a consolidated corporation liable for the debts of a constituent company it is necessary to show an agreement to pay such debts, or prove a consolidation, or show that the purchasing corporation was a mere continuation of the selling corporation, or that the transaction was fraudulent in fact."

While there are no circumstances in this case which disclose any fraud or bad faith, it seems evident to us that the new bank is liable for the instant liability of the former bank, which it caused to be liquidated after taking over all of the real assets.

It appears from the evidence that the new bank assumed liability for all of the indebtedness of the old concern which was disclosed, and we are unable to conclude that the failure to discuss this particular item in the transaction bars a recovery.

The recovery in this case is based specifically on the ground that an agreement may be inferred from the entire transaction amounting in law to a consolidation, or that the purchasing company (in this case the Planters State Bank) was legally a successor of the former bank which the new concern caused to be liquidated.

Therefore the Planters State Bank is liable in the amount of this indebtedness in the sum of $250 with interest from the date of judgment.

The judgment of the lower court is reversed, with instructions to render judgment against the Planters State Bank in said amount. The judgment of the lower court as to the defendants Trader and Britton is affirmed.

By the Court : It is so ordered.