MILLER *v.* FIRST NATIONAL BANK OF SOUTH BEND ET AL.

[No. 15,063. Filed May 11, 1936. Rehearing denied October 13, 1936. Transfer denied December 18, 1936.]

*Jackson, Jackson & Jackson,* for appellant.

*Seebirt, Oare, Deahl & Omacht* and *Harold J. Robertson,* for appellees.

WIECKING, J.—This is an action in which the appellant sued the First National Bank of South Bend and the First Bank and Trust Company of South Bend to recover an amount alleged to be due appellant on account of a savings deposit. The appellants complaint, denominated the second amended complaint, was in three paragraphs. The First Bank and Trust Company filed a demurrer to the second and third paragraphs of complaint, which demurrers were sustained by the

court. The appellant refused to plead further on these two paragraphs of complaint and the court thereupon entered judgment that the appellant take nothing by his second and third paragraphs of complaint and in favor of the appellees for costs. The First Bank and Trust Company also filed an answer in general denial to the first paragraph of complaint. The other appellee, First National Bank, filed an answer in general denial to all three paragraphs of complaint.

The cause was submitted for trial before the court, who found for the appellant and against the appellee First National Bank in the sum of $2,018.49 and for the appellee First Bank and Trust Company. The appellant filed a motion for new trial which was overruled by the court and then prayed an appeal to this court assigning as error here: (1) the error of the court in sustaining the appellee First Bank and Trust Company's demurrer to paragraph II of the appellant's second amended complaint; (2) the error of the court in sustaining the demurrer of appellee First Bank and Trust Company to paragraph III of appellant's second amended complaint; and (3) the error of the court in overruling appellant's motion for new trial on the grounds: (a) that the decision of the court is not sustained by sufficient evidence; and (b) the decision of the court is contrary to law.

The primary question involved here is the action of the court in sustaining the demurrer of the appellee First Bank & Trust Company to the second and third paragraphs of appellant's second amended complaint. The theory of each paragraph of complaint challenged is the same except that the third paragraph pleads some facts in more detail. Each incorporates by reference a certain Exhibit "A" which is a part of the complaint. The essential parts of the third paragraph of the second

amended complaint necessary for a consideration of this question are as follows:

"That on the 16th day of November, 1915, and at all times hereinafter mentioned, the defendant First National Bank of South Bend was a corporation owning, controlling and operating a National Bank in the city of South Bend, Indiana, under and by virtue of the laws of the United States.

"That on the 4th day of June, 1931, and for a long time prior thereto the defendant First Bank & Trust Company of South Bend was and now is a corporation duly organized and existing under and by virtue of the laws of the State of Indiana, for the purpose of carrying on a general banking business, and that it has been, and now is, engaged in carrying on such business with its office in the City of South Bend, Indiana.

"That on or about the 16th day of November, 1915, plaintiff deposited in the savings department of said National Bank the sum of One Thousand ($1,000.00) Dollars. That by the rules and regulations published in the pass book issued to plaintiff at the time said deposit was made, which rules were at that time in full force and effect, and which have continued to be in full force and effect ever since, said defendant National Bank agreed that interest should accrue at the rate of four per cent (4%) per annum on all sums of money which remained on deposit for six months or more, and that interest should be paid from each January 1st, April 1st, July 1st, and October 1st. That according to said rule plaintiff's deposit began to draw interest on January 1, 1916. That it was the custom of banks generally, and of the defendant National Bank in particular, at the end of each interest period to credit to the account of each savings depositor, the interest earned during the last six month period, and if the interest was not withdrawn, to pay interest on the accumulated interest. That by reason of said rule there accrued to plaintiff's account the sum of One Thousand ($1,000.00) Dollars interest on July 1, 1931. That plaintiff has never withdrawn any part of said principal or accrued interest, making a total amount now due to plaintiff from said defendant National Bank of Two Thou-

sand ($2,000:00) Dollars, which said sum is wholly unpaid.

"That on or about the 1st day of July, 1931, plaintiff presented his pass book to said defendant National Bank and requested and demanded that he be paid the full amount due to him as such depositor, including both principal and interest, and that said defendant National Bank refused, and still refuses, to pay plaintiff said amount or any part thereof.

"That on or about the 5th day of June, 1931, said defendant National Bank, being largely indebted to plaintiff as aforesaid, entered into a written agreement with the Indiana Trust Company of South Bend, a copy of which agreement is filed herewith, marked 'Exhibit A,' and made a part of this complaint. That since said time said Indiana Trust Company duly changed its name to the First Bank & Trust Company of South Bend; and that said Indiana Trust Company is one and the same corporation as the defendant First Bank & Trust Company.

"That pursuant to said agreement, and in accordance with the terms thereof, said National Bank sold, assigned, transferred, turned over and delivered to said defendant Trust Company, its entire corporate assets with the intention of ceasing the exercise of its corporate franchise, and on said date abandoned its aforesaid business and the purpose of its corporation, and has ever since failed to resume the same. That in consideration therefor said defendant Trust Company assumed and agreed to pay all of the liabilities of said defendant National Bank as shown by the general ledger of said National Bank as of the close of business on June 4, 1931.

"That the liability of said National Bank to plaintiff as aforesaid was not included in the liabilities of said National Bank as shown by its general ledger as of the close of business on June 4, 1931.

"That said assets were turned over, delivered to and absorbed by said defendant Trust Company in direct violation of the rights of the various creditors of said National Bank, including this plaintiff. That at the time of the transfer of said assets, said defendant Trust Company well knew or should have known, of the existence of other outstanding claims against and liabilities of said National Bank, includ-

ing the claim of this plaintiff, not shown by the general ledger of said National Bank as of the close of business on June 4, 1931; and that no provision was made in said agreement, and was not made before and has not since been made, for the payment of such other outstanding claims and liabilities, including the claim of this plaintiff. Plaintiff alleges that the transfer of said assets as aforesaid was made at a time when it was reasonably apparent to the officers of said National Bank that said National Bank would presently be unable to meet its obligations and would be obligated to suspend its ordinary operations; that said National Band did, immediately after said transfer, suspend its ordinary operations. That at the time of said transfer, and immediately prior thereto, the condition of said National Bank was unsatisfactory, its capital and surplus fund impaired and an assessment against the stockholders on their capital stock threatened. That by the terms of said agreement, set forth in Schedule 'A' hereto, said National Bank agreed to take the necessary legal steps to have a liquidating agent appointed, and did thereafter appoint a liquidating agent. That said transfer of assets was made with a view to prevent a ratable distribution of the assets of said National Bank among its creditors, and/or with a view to the preference of certain creditors to other creditors, including this plaintiff. Plaintiff further alleges that the transfer of assets as aforesaid, by said National Bank was made in contemplation of insolvency; that said National Bank is now insolvent; and that said National Bank has no property now, and did not have on June 5, 1931, or at any time since, with which and out of which to satisfy plaintiff's claim other than that embraced in the transfer and assignment to said Trust Company. That said defendant Trust Company has realized a large amount of cash and money from said assets and has paid many creditors of said National Bank the full amount of their claims, but that said Trust Company has refused and still refuses to pay plaintiff his claim or any part thereof, although demanded and requested to do so.

"That by reason of these premises the transfer of said assets from defendant National Bank to defendant Trust Company is utterly null and void as against plaintiff."

Exhibit 'A' referred to in the above paragraph of complaint, omitting the signatures, is as follows:

## "EXHIBIT A

"This agreement made and entered into this 5th day of June, A. D. 1931, by and between the First National Bank of South Bend, Indiana, a national banking association operating under the laws of the United States of America heretofore conducting a general banking business and having its principal place of business in the City of South Bend, County of St. Joseph, State of Indiana, hereinafter called the National Bank, party of the first part, and the Indiana Trust Co., a banking corporation organized and existing under and by virtue of the laws of the State of Indiana, having its place of business in the City, County and State aforesaid, hereinafter called the State Bank, party of the second part. Witnesseth, that whereas the condition of the National Bank is unsatisfactory, its capital and surplus fund is impaired and an assessment is threatened, which is considered to be very dangerous to the said National Bank and *whereas the State Bank has offered to assume and pay all liabilities to the depositors of the National Bank in consideration of the transfer by the National Bank to the State Bank of all assets, claims, choses and rights in action of every kind and nature* including claims under fire, fidelity and or other kinds of insurance *of the National Bank* and in the further consideration of the issue and delivery by the National Bank to the State Bank of its secured promissory note for the sum of $1,400,000, on terms hereinafter set forth. Now, therefore, this agreement witnesseth, that the parties hereto in consideration of the premises and of $1.00 by each to the other in hand paid, the receipt whereof is hereby acknowledged, agree as follows:

"1. The National Bank does hereby grant, bargain, sell, assign, transfer and set over unto the State Bank and its successors all of the assets of said National Bank of every kind and nature and wherever situated.

"2. The National Bank agrees to execute and deliver to the State Bank good and sufficient deeds of warranty conveying the real estate of said Na-

tional Bank and also to make, execute and deliver to said State Bank all proper assignments, conveyances, bills of sale, assurances and other instruments and assignments which may at any time and from time to time be requested and necessary or desirable to transfer the title of said assets both real and personal, and effectually to vest the same in the State Bank.

"3. The National Bank agrees to execute and deliver to the State Bank its secured promissory note in form satisfactory to party of the second part to be payable on or before five years from the date hereof with interest at the rate of 6 per cent per annum, payable without relief from valuation or appraisement laws and with all attorneys' fees and for the principal sum of $1,400,000, provided however, that if the assets hereby transferred shall be liquidated without said note being paid in full, then the same shall immediately become due and payable.

"4. The State Bank agrees that it will proceed to liquidate the assets hereby conveyed to it at such time and in such manner and for such prices as in the judgment of the State Bank will be for the best interests of both banks, provided however, that the National Bank shall have the right to purchase any assets hereby conveyed to the State Bank, and not rejected by the State Bank, at the price and upon the terms offered to the State Bank by any third party, provided further however, that the National Bank shall be required to make its election to purchase and pay reasonable earnest money to evidence its good faith within five days after the State Bank indicates the terms of sale. The State Bank shall make no charge for space used or for services of its officers or employees or any other expenses except out of pocket expenses and attorneys' fees.

"5. The State Bank hereby assumes, and agrees to pay only the liabilities plus accrued interest thereon of the National Bank as shown by the general ledger of the National Bank as of the close of business on June 4, 1931. The State Bank does not assume or agree to pay any liabilities of the National Bank to its shareholders or liabilities of the National Bank to the State Bank under this agreement or any liabilities of the National Bank which

are not shown on the general ledger of the National Bank as of the close of business on June 4, 1931.

"6. The State Bank is hereby authorized and empowered to sell the bonds deposited with the Treasurer of the United States to secure the circulating notes of said National Bank and in such event, sufficient proceeds shall be left on deposit with the Treasurer of the United States to retire all outstanding circulating notes of said National Bank and the surplus after the deduction of expenses of sale, if any, shall be applied upon the payment of the note of said National Bank hereinabove referred to.

"7. Any excess of assets remaining after the payment of the liabilities assumed hereunder shall be delivered to the liquidating agent herein provided for and in such event the note herein described shall be cancelled and delivered to the said agent and it is further agreed that if the proceeds of the assets hereby conveyed to the State Bank shall not be sufficient to pay and discharge the liabilities hereby assumed by the State Bank, then and in such event the said note or so much thereof as may be necessary to pay said deficiency shall forthwith become due and payable.

"8. All instruments which are required to be given by either bank in order to carry out the terms and conditions of this agreement shall be executed and delivered by the President and Cashier of the National Bank and President and Secretary of the State Bank unless their respective boards of directors shall otherwise direct.

"9. It is further understood and agreed that the State Bank shall, if and when the consent of the State Bank Examiner of the State of Indiana can be obtained, change its name to First Trust & Savings Bank of South Bend, Indiana.

"10. *The National Bank shall take the necessary legal steps to have a liquidating agent appointed* whose compensation if any, shall be paid by the National Bank.

"11. The National Bank shall be and remain liable for any and all taxes, special assessments and similar charges, now liens upon the assets hereby conveyed and all current bills including wages and salaries. If the State Bank shall be obliged to pay

any of the items set forth in this paragraph, the payment so made shall constitute a charge against and a lien upon the assets hereby transferred.

"12. The State Bank shall during the process of liquidation have the full right and authority to preserve and protect the assets hereby conveyed and any outlay incurred therefrom shall be a charge against the National Bank and a lien upon such assets hereby conveyed.

"13. It is further understood and agreed that the State Bank will insofar as possible be substituted as a guardian, trustee, executor, administrator, receiver or other fiduciary in the place and stead of the National Bank in all matters now included in its trust department.

"14. *The National Bank hereby guarantees the accuracy of its records* and the authenticity of the signatures upon written instruments included in the assets hereby conveyed.

"15. *The National Bank further covenants and agrees to indemnify and save the State Bank harmless from any loss or damage which it may sustain on account of claims,* damages or suits for damages *or liabilities other than those hereby expressly assumed by the State Bank.*

"In witness whereof the party of the first part has caused this instrument to be signed by its president and its cashier and its corporate seal to be hereunto affixed and the party of the second part has caused this instrument to be signed by its president and secretary and its corporate seal to be hereunto affixed, at the date and year above written." (Our italics.)

The appellee First Bank and Trust Company by its demurrer proceeded upon the theory that the paragraph of complaint attempted an action upon the contract set out as Exhibit "A" and that the appellant was not a party to the contract. We do not agree with this contention. The third paragraph of complaint in our opinion is not based upon the contract in question but attempts to state an action in equity to establish appellant's lien on the assets transferred from the National Bank to the appellee First Trust and Sav-

ings Bank and to obtain payment of appellant's claim out of those assets.

The previous decisions of this court and of the Supreme Court of this state are to the effect that private corporations like private persons may prefer any of its creditors until its property passes into the custody of the law by seizure under proceedings in attachment, or by the appointment of an assignee, trustee or receiver. So, as applied to private corporations, the decisions of this state, in effect, constitute a denial of the "trust fund" doctrine. *Nappanee Canning Co.* v. *Reid, Murdock and Co.* (1902), 159 Ind. 614, 64 N. E. 870; *Travis* v. *Porter* (1927), 86 Ind. App. 369, 158 N. E. 234.

In our opinion, however, the question here presented to us is not simply whether or not an individual or corporation may prefer his creditors, but whether a particular kind of corporation, a national bank, may prefer its creditors. The answer to this question involves not only a study of the line of decisions cited but also the acts with relation to banking and the decisions applying to such acts. In our opinion the legislation with reference to banking points to but one premise, which is that a banking institution is to exercise its franchise only in circumstances which presuppose the ability of the bank to pay all its depositors. Under such circumstances there can be no basis for the inference that a bank has a right to prefer any creditor.

The paragraphs of complaint here under consideration allege a deposit by the appellant in the National Bank. Then some years later the National Bank *sold all of its assets* to the State Bank (appellee First Bank and Trust Company) under an agreement by which the latter *agreed to assume and pay only the depositors of the National Bank shown by the general ledger.* The contract further discloses that at the

time of the transfer of all of its assets, the National Bank was insolvent or in contemplation of insolvency within the meaning of Title 12, Section 91 of U. S. C. A., relating to national banks, which is as follows:

"§91. Transfers by bank and other acts in contemplation of insolvency. All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court. (R. S. §5242)."

From the language of the above section it is immediately apparent that any sale or transfer of the National Bank's assets made *while insolvent or in contemplation of insolvency* is void unless it is also apparent that the intention also was to secure a ratable distribution of its assets to all its creditors. The first question therefore is: was the transfer of assets to the State Bank made while the National Bank was insolvent or in contemplation of insolvency? An "act of insolvency" by a national bank means a condition of inability to meet current pecuniary obligations or any act which would be an act of insolvency on the part of an individual banker, or in which the bank by refusing to pay its obligations, commits an act of insolvency within the meaning of Section 91, Title 12, U. S. C. A., even though it may possibly have assets enough finally to meet its

demands. *Market National Bank* v. *Pacific National Bank* (1883), 30 Hun. 50, affirmed (1883), 93 N. Y. 648. Likewise, a national bank may be said to be acting in contemplation of insolvency "when, in making some disposition of its assets, it is actuated by its knowledge of its insolvency." *McDonald* v. *Chemical National Bank* (1898), 84 Fed. 874, affirmed (1899), 174 U. S. 610, 19 S. Ct. R. 787, 43 L. Ed. 1106. In a late case the District Court of Montana held a national bank to be "in contemplation of insolvency" when the fact becomes reasonably apparent to its officers that it will presently be unable to meet its obligations and will be obliged to suspend its ordinary operations. *Browne* v. *Stronach* (1925), 7 Fed. (2d) 685. Tested by the above rules the National Bank was at least in contemplation of insolvency at the time of the transfer of *all* of its assets to the State Bank, as the agreement recites that "the condition of the National Bank is unsatisfactory, its capital and surplus fund is impaired and an assessment is threatened, which is considered to be very dangerous to the said National Bank . . .," and the tenth clause of the agreement provides that the National Bank will take the necessary legal steps to have a liquidating agent appointed.

These facts being true, it must be assumed that the National Bank intended that all its creditors should stand on an equal basis. It is true that one clause of the agreement provides that the State Bank assumes and agrees to pay only the ledger liabilities to shareholders, but when the agreement is read as a whole, it is the evident intention of the agreement that the State Bank would pay all creditors whether shown by the general ledger or not. The recital at the beginning of the agreement is to the effect that "the State Bank has offered to assume and pay *all liabilities to the depositors of the National Bank* in consideration of the transfer by the National Bank to the State Bank of all assets, claims,

choses and rights in action of every kind and nature . . . of the National Bank . . ." The fourteenth and fifteenth clauses of the contract indicate the same thing inasmuch as the fourteenth clause is a guarantee by the National Bank of the authenticity of its records and the fifteenth is a clause providing that in case the State Bank should be called upon to pay any claims other than those expressly assumed by it, they would be indemnified by the National Bank.

In our opinion the rule with regard to national banks is not that they, like private corporations or individuals, may prefer certain creditors, but that an assignee bank which takes over the liabilities of a national bank, which is in contemplation of insolvency, becomes liable to every person who might be found to be a depositor and that the liability of the assignee bank is not limited to such deposit liabilities as are listed and acknowledged. *Sudovich* v. *Central Bank of Bingham* (1927), 55 N. D. 856, 215 N. W. 310, 56 A. L. R. 200; *Riegal* v. *Planters State Bank* (1924), 100 Okla. 42, 227 Pac. 105. A proper action to enforce such an unlisted claim in our opinion is an equitable proceeding against the assignee bank which has taken over all of the real assets of the old bank. *Chicago, etc., R. Co.* v. *Taylor* (1914), 183 Ind. 240, 108 N. E. 1; *Okmulgee Window Glass Co.* v. *Frink* (1919), 260 Fed. 159; *Cobb et al.* v. *Interstate Mfg. Co. Corp.* (1927), 20 Fed. (2d) 786.

The court erred in sustaining the demurrer of the appellee First Bank and Trust Company to the second and third paragraphs of appellant's second amended complaint.

The judgment of the St. Joseph Circuit Court is reversed with instructions to overrule the demurrer of the appellee First State Bank and Trust Company to the

second and third paragraphs of appellant's second amended complaint and for further proceedings not inconsistent with this opinion.

Judgment reversed.

Curtis, C. J., not participating.