No. 19,786.

IDA MAY ELLIOTT et al., *Appellants,* v. JOHN P. HOFFHINE, *Appellee,* et al.

SYLLABUS BY THE COURT.

DEED—*Valid Delivery before Death of Grantor.* A father executed and acknowledged a warranty deed conveying a farm to a minor son aged nineteen years, and told the notary to keep the deed until he called for it, that he was not going to record it. Less than four weeks later, during his last illness, he directed his brother and the grantee to get the deed and record it, which they did a few days afterward and following his death. During his illness he stated that he intended the grantee to have the farm because he believed his son, who was the eldest of the children, would keep the family together and pay off an existing incumbrance. *Held,* sufficient to sustain a finding of the trial court that the deed was delivered.

Appeal from Washington district court; JOHN C. HOGIN, judge. Opinion filed January 8, 1916. Affirmed.

*Edgar Bennett, Charles W. Clarke,* both of Washington, and *Arthur E. Lybolt,* of Kansas City, Mo., for the appellants.

*A. J. Freeborn,* and *J. R. Hyland,* both of Washington, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is a suit for partition. The parties are children and heirs at law of John M. Hoffhine, who died intestate December 29, 1888, owning a farm of 160 acres, which he occupied with his family as a home. The plaintiffs appeal from a decree adjudging that defendant John P. Hoffhine, one of the sons of the deceased, owns the entire premises.

The facts have been found separately by the trial court, and while plaintiffs have argued a number of questions, the only one which we think is necessary to consider is whether there was evidence to support the finding that the deeds under which John P. Hoffhine claims title were delivered.

The grantor had been married three times and there were three sets of children. On December 3, 1888, he and Mrs. Hoffhine, step-mother to the children of the former marriages, agreed upon a separation. She was given the custody of her infant child and relinquished all her interest in the farm in consideration of the payment of $1000. They went before a notary, where they executed and acknowledged a warranty deed conveying the farm to John P. Hoffhine, at that time a minor of about nineteen years of age. Mrs. Hoffhine at the same time executed a quitclaim deed. Mr. Hoffhine paid her $700 in money and gave her his note for $300, which was on the same day signed also by the son. After his father's death, which occurred a few weeks later, John paid his step-mother the note. The evidence to establish a delivery of the warranty deed was substantially as follows: When the notary had taken the acknowledgments he said the deed was ready to be recorded. The grantor said: "Well, you just keep it until I call for it; I am not going to record it." The notary then placed both deeds in his safe, where they remained until after Mr. Hoffhine's death, which occurred less than four weeks later. During his last sickness Mr. Hoffhine stated to different per-

sons that he intended to convey the land to John, and that he thought John would be able to pay off the indebtedness and keep the family together. There was evidence, too, that a few days before his death he said to his brother: "You and John go and get those deeds and have them recorded." Immediately after his death, John and his uncle, to whom this statement was made, got the deeds from the notary and had them recorded.

While not tending in any respect to establish a delivery of the deeds, it should be said here that after the death of the father the family remained on the farm, the younger children were kept in school, and all assisted in the usual farm work. John was the eldest and took charge of affairs. From the receipts of the place he paid the taxes and an old mortgage that existed on the farm, and kept the family together until the children came of age.

The general rules which control in determining what is necessary to constitute the delivery of a deed have so frequently been considered in recent cases that we shall not undertake to restate them nor to review the wilderness of cases involving the application of those rules to particular facts. As was said in *Alward v. Lobingier,* 87 Kan. 106, 123 Pac. 867, the general rules which govern in cases of this kind "do not admit of universal application," and "each case depends to some extent upon its own peculiar circumstances." (p. 108.) Where manual delivery is relied upon, the conclusive test is whether the grantor relinquished "the right to the immediate control of the deed." (p. 108.) If no further evidence of delivery had been offered except to show what occurred in the presence of the notary, the authorities cited by plaintiffs would tend strongly to support their contention. The direction to the notary not to record the deed but to hold it until the grantor called for it indicates that he had no intention at that time to relinquish the right to the immediate control of the instrument, but, on the contrary, that he intended to and did retain the right of control; that if at any time thereafter he had changed his mind, he could have called for the deed and destroyed it. But there was further testimony showing that a few days before his death he directed his brother to go and get the deed and record it. That this direction was not carried out until after his death does not affect the situation. There was at

least evidence to support the trial court's finding to the effect that he had divested himself of all control over the instrument and intended from that moment it should pass out of his control, and if this is true there was a legal delivery. Besides, the grantee was his son and a minor; and all the circumstances of the case—the father's statements during his illness, showing an intention to complete the conveyance so that the son should have the farm and keep the children together—were matters to which the trial court evidently gave due consideration. Since the title to the real estate passed immediately by the conveyances to John, the other questions urged by the plaintiffs go out of the case. His ownership is not affected by the character and extent of his possession, the knowledge or notice other members of the family had that he claimed title, or his absence from the state. The father saw fit to give the place to him upon considerations which were deemed sufficient and which are not open to inquiry.

There was evidence offered by the plaintiffs tending to show that when John's father made the statement directing the recording of the deed he was to more or less extent under the influence of opiates; but the court has found the facts upon evidence sufficient to support them, and the judgment must be affirmed.