Note.—See under (1) 3 C. J. p. 457, §269; p. 576, §412; p. 579, §413; 23 R. C. L. p. 45; 4 R. C. L. Supp. p. 1490. (2) 34 Cyc. p. 163 (Anno). (3) 3 C. J. p. 575, §412; 34Cyc. pp. 139 (Anno), 158, 159, 160 (Anno). (4) 27 Cyc. p. 1627. (5) 34 Cyc. p. 160. (6) 4 C. J. p. 726, §2647; p. 897, §2867; p. 902, §2871; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 432; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 73.

## SECURITY NAT. BANK OF TULSA v. CAIN et al.

No. 16848.   Opinion Filed April 5, 1927.

Rehearing Denied Sept. 27, 1927.

(Syllabus.)

**1. Appeal and Error—Review—Sufficiency of Evidence.**

In cases of purely equitable cognizance, whether tried to the court or to a jury, whose verdict is merely advisory to the court, on appeal the Supreme Court will review the evidence, but will not disturb the judgment of the trial court unless the same is contrary to the clear weight of the evidence, and in law cases where questions of fact are submitted to the jury, the verdict and judgment rendered thereon will not be disturbed by this court where there is any evidence reasonably tending to support the same.

**2. Appeal and Error—Review—Theory of Case as Tried Binding.**

Where a cause has been submitted to the trial court upon a particular theory, and from the judgment rendered appeal prosecuted to the Supreme Court, neither party will be allowed to change the theory of his case and present it here on a different theory than the theory upon which it was presented to the trial court.

**3. Banks and Banking—Purchase by One Bank of Assets of Another With Assumption of Specified Liabilities—Joint Liability to Creditor for Property Converted by Selling Bank.**

Where a banking corporation takes over all of the property and assets of another banking corporation and assumes enumerated liabilities of such other banking corporation, and such other banking corporation discontinues business and it is shown that the purchasing bank has taken over from the selling bank property greatly in excess of the amount of the liabilities assumed. a creditor whose property has been converted by the selling bank prior to such sale of assets may prosecute his remedy against both corporations.

Error from District Court, Tulsa County; Summers Hardy, Special Judge.

Action by the Security National Bank of Tulsa against M. W. Cain and the Liberty National Bank. Judgment for defendants, and plaintiff appeals. Affirmed.

Hulette F. Aby, William F. Tucker, William H. Martin, Charles L. Yancey, Henry L. Fist, Owen Owen, and W. Y. Mauzy, for plaintiff in error.

Louis W. Pratt and James M. Springer, for defendant in error Cain.

J. P. O'Meara and M. H. Silverman, for defendant in error Liberty National Bank.

PHELPS, J. The Security National Bank of Tulsa brought suit in the district court of Tulsa county against M. W. Cain, pleading an indebtedness on two promissory notes executed by Cain in the principal sum of approximately $4,500. Cain answered. admitting the execution of the notes, and by way of cross-petition alleged that prior to the execution of the notes he had entered into a verbal agreement with the Liberty National Bank of Tulsa through its officers, A. E. Lewis, president, and W. L. Lewis, vice president, by the terms of which he deposited with the Liberty National Bank $17,000 in Liberty Bonds for safe-keeping, it being understood that said bank should deposit said Liberty Bonds with the Federal Reserve Bank in Kansas City and pay Cain interest on said bonds and that at any time he desired to borrow money from said bank he was at liberty to do so by merely drawing his check against his account in said bank. and if he did not have funds to cover such check, the amount would be advanced to him by the bank, for which amount he should execute his note. such advancements to be in any sum up to the amount of the bonds so deposited. He further claims that in pursuance of such arrangement he executed the notes sued on. He further claims that the Liberty Bonds in question were converted by the Liberty National Bank and that such Liberty National Bank became, thereby, indebted to him for the amount thereof. He further claims that after such transaction the Security National Bank entered into a contract with the Liberty National Bank, by virtue of which contract all assets and property, both real and personal, amounting to nearly $3.000,000 belonging to the Liberty National Bank. was taken over and merged into, with. and became a part of the property and assets of the Security National Bank, plaintiff in error, and that because of such merger of assets the Security Na-

tional Bank and the Liberty National Bank, which had been made a party to the action, were indebted to him for the value of such Liberty Bonds, and prayed judgment against them for such amount, less the amount due on the notes.

The cause was tried to a jury, resulting in a verdict and judgment for Cain, to reverse which this appeal is prosecuted.

Plaintiff in error presents 21 specifications of error, but briefs and argues them under three propositions, the first of which is that the relief claimed by defendant is founded in equity, and therefore the verdict of the jury is merely advisory and the court is not bound thereby, for the reason that it is not supported by the weight of the evidence, citing Okmulgee Window Glass Co. v. Frink, 260 Fed. 159 (and many other cases).

It appears from the record that after the verdict of the jury was returned, the court, at the request of plaintiff in error, made findings of fact and conclusions of law, the first and third paragraphs of which conclusions of law read as follows:

"This is an action for the recovery of money only, and under the statute issues of fact are properly triable before a jury."

"There is sufficient evidence to sustain the verdict of the jury, and in the opinion of the court the preponderance of the evidence is in favor of the defendant M. W. Cain."

A careful examination of the record convinces us that, whether the cause is one in law or equity, the verdict of the jury and the judgment of the court rendered thereon are abundantly sustained by the evidence. If we adopt the contention of plaintiff, that the action is an equitable one and that the verdict of the jury is only advisory, we must still reach the conclusion that such verdict and the judgment of the court are not contrary to the clear weight of the evidence. and if we agree that it is a law action, there is ample evidence to sustain the verdict of the jury.

It appears that the Lewises, who had complete charge of the management of the Liberty National Bank, were former acquaintances of Mr. Cain; that Cain had bought $10,000 worth of Liberty Bonds and deposited them with one bank at Drumright and $7,000 worth with another and that such Liberty Bonds had been left with these banks for safe-keeping, and that one of the banks had, in turn, for safe-keeping, deposited them with the First National Bank of Tulsa; that in conversation with the Lewises in their bank at Tulsa they suggested to

Cain that they had an arrangement with the Federal Reserve Bank at Kansas City whereby they could take his Liberty Bonds and deposit them with the Federal Reserve Bank and pay him interest thereon, whereupon Cain endorsed upon one of the receipts given him by the Drumright bank the following:

"I hereby surrender the above receipt with instructions that the Liberty Bonds described above be mailed direct to the Liberty National Bank, Tulsa, Okla., for me

"(Signed) M. W. Cain."

At the same time the following letter was written to the Drumright bank:

"Kindly mail by registered mail my Liberty Bonds in the total amount of $10,000 par value, direct to the Liberty National Bank of Tulsa.

"(Signed) M. W. Cain."

—whereupon the Drumright bank wrote to the First National Bank at Tulsa the following letter:

"You are hereby authorized and instructed to deliver to the Liberty National Bank of Tulsa, Oklahoma, the above described bonds, taking receipt for same, a copy of which we will ask that you forward us for our files"

—and when the bonds were delivered the following receipt was given therefor:

"Tulsa, Oklahoma, April 8, 1922.

"Received of the First National Bank of Tulsa, Oklahoma, $10,000 in 4th 4¼% Liberty Bonds, which we have been holding in safe-keeping for the Drumright State Bank, Drumright, Okla.

"Liberty National Bank, Tulsa, Okla.
"By (Signed) R. C. Lamprich."

It is urgently contended by plaintiff in error that whatever dealings Cain had with the Lewises was an individual transaction between the parties wherein they bought his bonds outright, and that it was not a transaction between Cain and the bank; urging as evidence thereof that the Lewises gave Cain their individual promissory note for the amount of the bonds.

The trial court's findings of fact recite that the Liberty Bonds in question were delivered to the Liberty National Bank in April, 1922, and that they were then converted by said Liberty National Bank, which conversion was fraudulently concealed from Cain, and that in October, 1923, the Lewises executed their promissory note to Cain in the sum of $17,000, which note recited on its face that it was in payment for Liberty Bonds, and that as a part of the same transaction the Lewises executed and delivered to Cain a receipt or agreement, agreeing, upon

demand, to deliver Liberty Bonds of equal value of the same issue as those delivered to the Liberty National Bank by Cain, Cain believing at that time that the bonds were still in the possession of the Liberty National Bank and that they would be retained by it, and that the note and receipt were accepted by Cain as security for the safe-keeping and return of the Liberty Bonds.

The oral testimony introduced on this subject was conflicting, but, as we view it, the written evidence introduced, a part of which in hereinbefore set out, as illuminated by the oral testimony, abundantly sustains the findings of the court that the transaction was one, not with the Lewises individually, but with the bank, wherein the bonds were not sold to the Lewises, but were deposited with the bank for safe-keeping.

The second proposition presented by counsel for plaintiff in error is that neither the president nor vice president of a national bank has actual or apparent authority to borrow money or bonds on behalf of the bank, and in the absence of authorization or ratification by the board of directors the bank is not bound by such act on the part of the president or vice president, citing Western Bank v. Armstrong, 152 U. S. 346, 38 L. Ed. 470, and many other authorities. The authorities here cited undoubtedly state the law correctly, but, as we view it, the question here presented is an entirely new and different question from that presented to the trial court. Reference to the pleadings discloses that it was the contention of Cain that he deposited his Liberty Bonds with the bank for safe-keeping and that the bank converted them, and it was the contention of the bank, as disclosed by the pleadings. not that the president and vice president exceeded their authority in borrowing money or bonds for the bank, but that the transaction with the Lewises was an individual one and any remedy Cain had was a remedy against the Lewises and not against the bank.

It has long been the settled law in this jurisdiction that on appeal the cause must be presented upon the same theory upon which it was presented to the trial court. and that a party litigant will not be allowed, after lodging his appeal in this court. to change the theory of his case and present other or different questions than those presented to the trial court. Therefore, that question not having been submitted to or considered by the trial court, we decline to consider it here.

The third proposition submitted by plaintiff in error is that:

"The purchase by one bank of the assets of another in consideration of the assumption of certain specific liabilities by the purchasing bank equal to the value of the assets taken does not subject the purchasing bank to liability for other debts or claims asserted against the selling bank, where such selling bank is not divested of all its assets and where such purchasing bank agrees to deliver and return to the selling bank any surplus of assets remaining after payment of said specified liabilities, the selling bank having retained its corporate existence and being unliquidated."

In the trial court's findings of fact it was determined that the Security National Bank took over all of the assets of the Liberty National Bank (including the notes sued on herein), choses in action, rights of actions, and lease on its banking room, aggregating a total value of $2,960,833.31, and the Security National Bank assumed and agreed to pay the liabilities of the Liberty National Bank in the total sum of $2,606,701.43, and that upon the execution of the contract between the two banks the Liberty National Bank ceased to do business as a banking institution and all of its assets, books, records deposits, cash on hand, bills receivable, and all other property were transferred to the banking house of the Security National Bank and the customers of the Liberty National Bank continued thereafter to transact business with the Security National Bank in the same manner as if there had been no interruption in the business of the Liberty National Bank.

The second paragraph of the court's conclusions of law, however, reads as follows:

"There was no merger of the Security National Bank of Tulsa, Okla., with the Liberty National Bank of Tulsa, Okla., at the time this suit was brought, and at the time of the trial the Security National Bank of Tulsa, Okla., and the Liberty National Bank of Tulsa, Okla., each maintained its separate corporate existence."

In the contract between the two banks the items constituting the assets were specifically set out and named and the purchasing bank specifically assumed certain liabilities of the selling bank the same being named by items. but there was a difference of $354,131.88 between the indebtedness assumed and the value of the assets transferred, which difference the contract specified was for the purpose of indemnifying the purchasing bank against any loss it "might sustain of any kind or nature in the transfer of such assets."

Counsel for plaintiff in error cite and rely on First Bank of Mangum v. Lock, 113 Okla. 30, 237 Pac. 606 (and a number of other authorities), the third paragraph of the syllabus of which reads as follows:

"Where one bank acquires the principal assets of another bank, under a contract whereby it assumes and agrees to pay specific liabilities of the selling bank, and some of the officers and stockholders of the selling bank become officers and stockholders of the purchasing bank, same does not constitute a merger of the two banks or the pooling of the assets. and the purchasing bank does not become liable to general creditors of the selling bank, in the absence of a specific allegation of fraud in the transaction between the two banks."

They also cite Drovers & Mechanics Nat. Bank v. First Nat. Bank, 260 Fed. 9, holding that:

"'A purchase by definite contract by one banking corporation of the assets of another and the assumption of debts specified in the contract does not constitute a merger or consolidation, and does not, in the absence of fraud, make the purchasing corporation liable for all the debts of the selling corporation."

It will be observed, however, that in the instant case Cain does not plead a merger of the corporations, and the court specifically finds that the corporations were not merged, but each retained its corporate identity, but the facts remain that all the assets of the Liberty National Bank were transferred to the Security National Bank, and the contract shows upon its face that the value of the property transferred to and held by the Security National Bank was $354,131.88 more than· the indebtedness definitely assumed by it, and we can imagine nothing more unjust or inequitable than to say that the Security National Bank, although entitled to the benefits of the transfer of the assets to the extent that it may recover the $4,500 on the Cain notes, and although it holds $354 131.88 belonging to the Liberty National Bank to guarantee it "against any loss it may sustain of any kind or nature in the transfer", may yet be relieved from any obligation to respond to the damages sustained by Cain, and we cannot agree that it was the intention of either the federal court or this court to lay down a rule in the cases above cited

As we see it, the facts in the case at bar are easily distinguishable from the facts in First State Bank of Mangum v. Lock. supra, in that the law in that case is available where "one bank acquires the principal assets of another bank." whereas in the instant case the purchasing bank acquires all of the assets of the selling bank. Again, that case holds that the purchasing banks "do not become liable to the general creditors of the selling bank", and we think it not at all unreasonable to say that Cain could hardly be placed in the category of general creditor. rather, that he had a lien, at least upon the assets of the selling bank the value of which was over and above the amount of the indebtedness assumed by the purchasing bank, to the extent of the amount due him. In Drovers & Mechanics Nat. Bank v. First Nat. Bank, supra, it is stated that the purchasing bank, "in the absence of fraud", is not "liable for all the debts of the selling corporation." It will thus be seen that it was not the intention of the court to lay down a rule that would relieve the purchasing corporation from liability where fraud had been committed against creditors. Can it be said that in the instant case the purchasing bank may have in its possession more than $350,000 belonging to the selling bank which Cain cannot reach to reimburse him for his losses without saying in the same breath that fraud has been committed against him? And again. in that case the rule laid down seems to contemplate that the purchasing corporation should not be liable "for all the debts of the selling corporation", which, to our minds, is not equivalent to saying that the purchasing bank, under a particular set of circumstances, would not be liable for any of the debts of the selling corporation. This view is, at least in a measure, supported in Skirvin Operating Co. v. Southwest Electric Co., 71 Okla. 25, 174 Pac. 1069. although a substantially different state of facts existed there. This view also finds support in Riegel v. Planters State Bank, 100 Okla. 42, 227 Pac. 105.

Just what the respective rights of the contracting banks are and whether the purchasing bank may be reimbursed from the assets it received over and above the liabilities assumed, we are not here called upon to determine, but, in view of all the facts disclosed by the record, it is our conclusion that the judgment of the trial court was a most righteous one and amply supported by the law and evidence, and is. therefore, affirmed.

BRANSON. C. J., MASON, V. C. J., and LESTER, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 4 C. J. p. 853, §2834; pp. 875, 876, §2852; p. 987, §2867: p. 898. §2868; p. 900, §2869; 21 C. J. p. 594, §735; 38 Cyc. p. 1937; 2 R. C. L. p. 202; R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91 (2) 3 C. J. p. 662, §2556; p. 720, §618; 2 R.

C. L. p. 79 et seq.; 1 R. C. L. Supp. p. 387; 4 R. C. L. Supp. p. 79; 5 R. C. L. Supp. p. 68; 6 R. C. L. Supp. 65 (3) 7 C. J. p. 491, §30 (Anno).