**BOLLENBACH, Adm'r, v. BOLLENBACH.**

No. 23705.    Sept. 17, 1935.

Rehearing Denied Oct. 15, 1935.

Wilson & Wilson, for plaintiff in error.

R. F. Shutler, for defendant in error.

PER CURIAM. This was an action instituted in the district court of Kingfisher county, Okla., by the plaintiff in error, Dick H. Bollenbach, administrator of the estate of Gus H. Bollenbach, deceased, and on behalf of himself and heirs and creditors of said estate, against the defendant in error, Hattie F. Bollenbach, the second and surviving spouse of Gus H. Bollenbach, deceased; the parties will be referred to as they appeared in the lower court.

The plaintiff alleges in his petition that he is the duly appointed, qualified, and acting administrator of the estate of Gus H. Bollenbach, deceased, his father; that the said Gus H. Bollenbach died on January 22. 1931, leaving at the time of his death the plaintiff and two other children by a first marriage and three children by the second marriage, and the defendant, the second and surviving wife. That the said Gus Bollenbach had married the defendant a number of years ago, but that on August 24, 1923, he brought suit and recovered divorce from the said defendant, and had a property settlement, but that, in 1924, the defendant after using up the proceeds of said settlement returned to Kingfisher and remarried the said Gus H. Bollenbach, and they then continued to live together until the death of the said Gus H. Bollenbach on January 22, 1931. Plaintiff alleges, further, that at the time of the death of the said Gus H. Bollenbach, deceased, he was seized and possessed of the following described property, to wit:

The southeast quarter of the northwest quarter and lots three (3), four (4) and five (5) all in section six (6), township sixteen (16) north, range six (6), W. I. M., Kingfisher county, Okla.

Lots thirteen (13), fourteen (14), fifteen (15), sixteen (16), seventeen (17), eighteen (18), and nineteen (19), in block sixty-seven (67) Kingfisher City, Kingfisher county, Okla., and,

Lots one (1), two (2), three (3), and four (4) in block sixty-seven (67), Kingfisher City, Kingfisher county. Okla. and

1 1929 Dodge automobile and an undivided one-third (1/3) interest in and to the Model Grocery in Kingfisher, Okla., also known as Bollenbachs Brothers Grocery, including stock, fixtures, moneys, accounts, merchandise and fixtures located on lot two (2), block twenty-one (21), Kingfisher city, also household goods, tools and personal property on lots one (1) to four (4), inclusive, block sixty-seven (67), and other personal property.

Plaintiff alleges further that all of the said property was acquired by the deceased prior to his marriage to the defendant the second time, and by reason thereof the said

defendant was entitled only to an undivided 1/7 interest in said property.

Plaintiff alleges in his petition that the defendant claims the title to all the said property by and through pretended and purported deeds and bill of sale, but if such deeds and bill of sale existed they were merely attempted testamentary devises of all of said property and are void as testamentary devises, for the reason that they were not duly executed, signed, witnessed and attested as testamentary devises are required to be, that they were null and void as conveyances inter vivos for the reason that they were not intended to take effect until after the death of the said Gus H. Bollenbach, deceased, and never delivered by the maker thereof, and that he never authorized delivery before his death. Plaintiff alleges further that after the death of the said Gus H. Bollenbach, deceased, the defendant acquired possession of the said deeds and bill of sale and caused them to be placed of record in the office of the county clerk of Kingfisher county, Okla., and that she was now claiming the said property by reason thereof. And plaintiff prays that said deeds and bill of sale be canceled and held for naught and set aside and title to all of said property be quieted and that the clouds thereon be removed, etc.

The defendant by answer denies generally and specifically all the allegations of the plaintiff's petition except that she admits that she is claiming the said lands and all the property described in plaintiff's petition, and in the deeds and bill of sale set out in plaintiff's petition. But defendant specially denies that the said deeds and bill of sale were intended as testamentary devises, and states that the said instruments were conveyances inter vivos, and were intended to take immediate effect upon the delivery thereof; that each and all the said deeds and bill of sale complained of were delivered to the defendant in the lifetime of the said Gus H. Bollenbach; that said Gus H. Bollenbach intended and did deliver the said instruments with the intent then and there to part with title to the said property, and that this defendant retain possession and control of the said instruments and take possession of all the property conveyed by the said instruments immediately upon the delivery of said deeds and bill of sale, and the defendant has retained possession and ownership of the said property conveyed thereby, and still has the possession and control of all the property under claim of ownership by virtue of the said conveyances, and that she is now, and has been since the execution and delivery of the said instruments complained of, the sole owner of all the said property described in the said deeds and bill of sale mentioned in the plaintiff's petition, and she prays the court that plaintiff's petition be denied, and that she be declared by the court to be the sole owner of the property, and that her title thereto be quieted in her and as against the plaintiff and the heirs and creditors of the said Gus H. Bollenbach, deceased.

Upon a trial of the said cause the trial judge found the issues in favor of the defendant in the following language:

"Wherefore the court finds the said deed and bill of sale involved in this action were duly and legally executed and delivered to the defendant in the life of the grantor, with the intent then and there upon the delivery of said instruments that they should take effect immediately on delivery, and that the title to all of said property has been, by the execution and delivery of said instruments, and now is, absolutely vested in the defendant, Hattie F. Bollenbach, and that the plaintiff, in his representative capacity, or in his individual capacity, has no right, title, equity or interest of any kind or character in said property and the said plaintiff, Dick H. Bollenbach, as the administrator and personally, is hereby forever barred from asserting or claiming any interest, title, estate or equity of any kind or character in or to the said property and the title to all of said property is hereby quieted in the defendant Hattie F. Bollenbach."

The plaintiff, in a most ingenious petition in error that has been our privilege to peruse, sets out 27 specifications of error as grounds for reversal of this judgment; but the one and only issue involved in this case, as we see it, is whether or not there was a delivery of the deeds and bill of sale from Gus H. Bollenbach to the defendant before the death of the said grantor, and was it his intention to transfer title to the said property to the defendant? We may disregard all the other 24 specifications of error and devote our study of this cause to the second, third and fourth specifications of error, which in substance are as follows:

"That the said judgment and decision of the court is not sustained by the evidence, is contrary to the evidence and is contrary to law."

This court from time to time since its organization has invariably held that where there was any competent evidence tending to support the verdict of the jury, or in a case like this, the findings and decision of a court the verdict or judgment of the court will not

be reversed. Spring v. Major, 126 Okla. 150, 259 P. 125; Perry v. Myers, 127 Okla. 27, 259 P. 556; Niagara Fire Insurance Co. v. Flowers, 127 Okla. 137, 259 P. 840; Garner v. Riddle, 140 Okla. 70, 282 P. 319; Ponca City Milling Co. v. Krow, 131 Okla. 98, 267 P. 629; Bayers v. Gamblin, 130 Okla. 82, 265 P. 650; Mayhue v. Born, 130 Okla. 252, 267 P. 256; Wagner v. Davidson, 127 Okla. 199, 260 P. 37; Security National Bank of Tulsa v. Cain, 126 Okla. 202, 259 P. 572. and the latest case, Evans v. Fielder, 169 Okla. 437, 37 P. (2d) 430.

We find in the case at bar that there was ample testimony to support the findings and judgment of the trial court in favor of the defendant. The testimony of George Moore, J. I. Throckmorton, L. E. Davis, Jasper N. Williams, R. Pappe, Herman Bollenbach, all disinterested witnesses, and Hattie Bollenbach, herself, is sufficient evidence to support the findings of the trial court in finding that the deeds were executed and acknowledged in due form; that they were then and there delivered to the defendant at the home of the deceased, and in his presence and by him, and the said instruments were later taken or sent by the defendant to the store and put in the safe for safekeeping. We cannot see how the trial court could have held otherwise than to find there was a delivery of the deeds and bill of sale in question. Geo. Moore, a witness called for the defendant, stated that he was an abstractor living in Kingfisher; that he had known Gus Bollenbach a long time; that on March 6, 1930 he was called down to Gus Bollenbach's home and was requested by the deceased to make out some deeds for his property to his wife; that he did so, at the request of the said Gus Bollenbach; that there was present Mr. Bollenbach, the deceased, a Mr. Throckmorton, and a Mr. Pappe, and there was a woman out in the kitchen stirring around, who he thought was Mrs. Bollenbach, the defendant; that she was not in the room when he first went there; that he sat down and talked to Mr. Bollenbach, the deceased, a while and asked him what he wanted with him; that the deceased then told him that he wanted some deeds made out to his wife as she would need it all to take care of the children, meaning his minor children; that he thereupon made out the deeds, did not recall whether he had his typewriter with him or whether he went back to his office and drew them up, but when the deeds were ready he told the deceased he would have to call his wife in and have her sign them too; that the defendant seemed to be surprised when he called her in, but she made

no objection and they both signed the deeds; that after they had been signed and acknowledged, he (Moore) placed the deeds in an envelope and had two witnesses to sign the envelope, and that he (Moore) then asked the deceased, Gus H. Bollenbach, what he wanted done with the deeds, and that he testified that "he wanted them delivered to his wife."

"Q. What did you do then? A. I delivered them to her. Q. Right there in that room? (This question was objected to by plaintiff's counsel.) Q. Tell then what you did with them. A. Gus was sitting toward the east window and she (defendant) was kinda off to the west and north of me and I just put them in the envelope and handed them to her and I think she was standing up and he was sitting down. Q. He told you to deliver them to her, did he? A. Yes, sir. Q. This was all done in the presence of him and her and these witnesses? A. Yes, sir."

Mr. R. Pappe, another witness who was present during this transaction, corroborates, in substance, the testimony of George Moore, and says that he saw Mr. Moore hand the deeds to Mrs. Bollenbach.

J. I. Throckmorton, another witness for the defendant, who was present when the deeds were made out by Mr. Moore, testified that he lived in Oklahoma City, but formerly lived in Kingfisher; that he had known Gus Bollenbach a long time, and that every time he went to Kingfisher he went and visited Gus Bollenbach awhile; that on the 6th of March, 1930 (the date the deeds were executed), he went to Kingfisher and went down to see Gus Bollenbach, and while they were sitting there talking in Gus' house Gus got up and went to a little desk and pulled out a piece of paper and handed it to Throckmorton, and said "I would like to have you sign it as a witness"; that the witness opened it and read it and found it was a will, and that there were three or four lines across a sheet of paper, which read "To whom it may concern," or words to that effect; that he read the instrument and said: '"Gus this isn't worth the paper it is written on." and he said 'Why not?' and I said 'Well, you have other heirs and you have not given them a dime and that won't stand up'; that they talked it over a little bit and that Gus asked him to get Mr. Moore to come down and fix things up; that the deceased said he chose to deed the property to his wife; that Mr. Moore came down between 5 and 6 o'clock, and that he and Mr. Pappe were also there; that the deceased told Moore he wanted to deed the property to his wife, all of it, and Mr. Moore

then went and wrote up the deeds; that after the deeds were drawn up that Mr. Moore handed them to Bollenbach, the deceased, to sign and then Mrs. Bollenbach came in and signed them; that after Mrs. Bollenbach signed the deeds Mr. Moore took them and put them in the envelope and described what it was and explained it to us, and I forgot the words he used, but he told us it was a witnessing of the delivery of the deeds to Mrs. Bollenbach; that this was all done in the presence of Mr. Bollenbach; that the envelope with the deeds in it was then handed to Mrs. Bollenbach and he told her to take charge of it; that this was all in the presence of Mr. Bollenbach." Plaintiff seeks to show that because Gus Bol'enbach, the grantor in the deeds, had access to the safe at the store where Mrs. Bollenbach had deposited the deeds for safekeeping, this proved he had not relinquished control of them. But the facts were, as shown by the evidence, he did not touch the deeds after they were delivered to Mrs. Bollenbach, and that they remained right there in the safe where she put them until after his death. We believe this is ample evidence that there was a valid delivery of the said deeds before the death of the said grantor.

In 18 C. J. 198, it is held:

"The question of whether or not there has been a delivery must, therefore, be determined upon the facts of each particular case, and although certain principles are generally applicable, they do not furnish conclusive rules under all circumstances. It is essential to a valid delivery that there be some act or declaration from which an intention to deliver may be inferred, and this is true although the grantee is of very immature years. A formal delivery is not essential, nor are express words necessary. Nor is a manual delivery of the instrument to the grantee required, it being sufficient if it is apparent either from the words or acts of the grantor that it was his intentions to treat the deed as his and to make a delivery of the same." Moore v. Trott. 162 Cal. 268, 122 P. 462; Follmer v. Rohrer, 158 Cal. 755, 112 P. 544; Walker v. Green, 23 Colo. App. 154, 128 P. 855; Lee Hardware Co. v. Johnson (Ark.) 201 S. W. 289; Faulkner v. Feazel, 113 Ark. 289, 168 S. W. 568; Hibberd v. Smith, 67 Cal. 547, 4 P. 473, 56 Am. Rep. 726.

But we think one of the most decisive cases rendered on this point by this court is the case of Johnson et al. v. Craig et al., 37 Okla. 378, 130 P. 581, the facts of said cause being on all fours with the facts in the case at bar. In the Johnson Case, John H. Johnson and other brothers and sisters, collateral heirs of James Johnson, deceased, brought a suit to set aside a deed and to recover possession of a certain tract of land located in Kingfisher county and certain town lots in the city of Kingfisher, deeded to the defendant, Etta Craig, by James Johnson, deceased, during his lifetime. The cause was tried, resulting in a verdict for the defendants. It was contended by the plaintiffs in error that the deed in question, though executed on the day the will to the personal property was made, was not in fact delivered until after the death of the deceased, and was therefore, insufficient to convey title either as a will or as a deed. In this cause the court holds:

"The facts as to delivery being controverted, the whole case, therefore, rests upon the question of fact whether the deed was delivered before or after the death of the deceased.

"That such question is one of fact to be determined by the circumstances, actions, statements, and intentions of the grantor, is the consensus of authorities. 14 Ballard on Real Property, secs. 146, 152; 3 Devlin on Deeds (3d Ed.) sec. 265; 9 Am. & Eng. (2d Ed) 154; 13 Cyc. 750, and authorities cited by the foregoing text-writers. And that such fact is susceptible of parol proof is also well settled by the same authorities."

In Johnson v. Craig Case the facts showed that the defendant Etta Craig and her sister were taken by the deceased when they were mere babies and were reared by the deceased and his wife in Iowa; that later he moved to Nebraska, taking the children with him; that there his wife died; that after that the deceased moved to Oklahoma and bought the property in question. The oldest of the girls married William C. Craig one of the defendants herein, and the younger girl also married; that the deceased made statements to various peop'e that he wanted the two girls to have his property; but after the younger girl married somewhat against his will, he made a will bequeathing all his personal property to the o'der girl, Etta Craig and on the same day he made a deed conveying the real estate to her; he called one Mr. McNaught to come out and draw his will; that he consulted Mr. McNaught whether it would be better to make a deed in fee simple of the real estate to Etta and to bequeath the personal property in a will, and after consulting him he made a will bequeathing the personal property and executed the deed conveying all his

real estate to Etta Craig; that after the will had been signed and witnessed and the deed signed and acknowle. red, he put them in a tin box with instructi. s that it be given to Etta to take care of; that Etta (Mrs. Craig), being sick and in bed at the time, did not take the papers into her own hands, but told her husband to put them in the drawer.

How much stronger is the case at bar than this! In the case at bar the deeds were actually delivered into the defendant's hands by Mr. Moore, personally, at the request of and in the presence of the grantor, and she later took them or had them sent to the store and deposited in the safe for safekeeping. In this able opinion by the court a great number of relevant and decisive cases from a great line of authorities are cited with approval. See Brown v. North, 141 Iowa, 215, 119 N. W. 629; Riegal v. Riegal, 243 Ill. 626, 90 N. E. 1108; Glade Coal Mining Co. v. Harris, 65 W. Va. 152, 63 S. E. 873; Flynn v. Flynn, 17 Idaho, 147, 104 P. 1030; Chew v. Jackson, 45 Tex. Civ. App. 656, 102 S. W. 427; Martin v. Flaharty, 13 Mont. 96, 32 P. 287, 19 L. R. A. 242, 4 Am. St. Rep. 415; Belden v. Carter 4 Day (Conn.) 66, 4 Am. Dec. 185.

We believe the case at bar is founded upon more decisive facts in support of the trial judge's findings and judgment than were set forth in the Johnson v. Craig Case.

It is further urged by the plaintiff in error that the trial court erred in divers instances in the acceptance and rejection of the testimony and in the conduct of the opposing counsel; but from the examination of the records we find no material or substantial error in this regard. Finding no reversible error in the findings and judgment of the trial court and in the refusal to the trial court to grant a new trial, the judgment should therefore be affirmed, and it is so ordered.

The Supreme Court acknowledges the aid of Attorneys Thomas P. Holt and Robt. Wimbish in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Holt and approved by Mr. Wimbish the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and PHELPS, JJ., concur.