No. 33,299 ·

IDA M. RICHARD, *Appellant,* v. ROSCOE C. LEINBACH, *Appellee.*

(69 P. 2d 674)

Opinion filed July 10, 1937.

*Otis S. Allen, George S. Allen* and *Raymond Briman,* all of Topeka, for the appellant.

*W. J. Gregg, E. M. Gregg,* both of Frankfort, *E. C. Brookens* and *H. L. Hart,* both of Westmoreland, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to set aside a deed and to enjoin defendant from interfering with plaintiff in the possession of certain real estate. Judgment was for defendant. Plaintiff appeals.

Plaintiff was the sole heir of W. L. Fulton. For some years W. L. Fulton and Sarah Fulton, his wife, had lived in Pottawatomie county. At the time of the death of Sarah Fulton on January 10, 1933, she owned two quarter sections of land in Pottawatomie county. At her death W. L. Fulton, her husband, and this plaintiff were her sole heirs and each inherited an undivided one half of the two quarter sections.

The petition alleged the above facts and that W. L. Fulton died intestate on January 14, 1935, at the home of plaintiff; that at his death plaintiff was his sole and only heir at law; that he was eighty-two years of age at the time of his death; that he had been in feeble health for several years and had lived with plaintiff at her home near Tecumseh, Kan., since 1916, and during the last two years of his life required constant care and was unable to transact any business on account of the unsound condition of his mind. The petition further alleged that on January 15, 1935 (that was the next day after the death of W. L. Fulton), the defendant filed for record a quitclaim deed signed by W. L. Fulton conveying to defendant an undivided one-half interest in the two quarter sections; that this deed was dated June 28, 1934, and the consideration expressed was one dollar and love and affection. The petition further alleged that the deed was void because on June 28, 1934, and at all times for two years prior to that date and thereafter until his death Fulton was of unsound mind and memory and incompetent to manage his own affairs and did not know the effect of his act when he signed the deed. The petition further alleged that Fulton was induced to sign the deed by undue influence, fraud and deceit exercised upon him by defendant, and that he did not intend to convey his property to defendant. The petition further alleged that the deed constituted a cloud upon the title of plaintiff. The prayer of the petition was that the deed be set aside and defendant be enjoined from interfering with the plaintiff in her peaceable possession of the real estate in question.

The answer of defendant admitted the allegations of the petition as to the death of Sarah and W. L. Fulton and that W. L. Fulton

and plaintiff were the only heirs of Sarah Fulton, and admitted that defendant was about to disturb the plaintiff in her alleged possession of the real estate described in the petition. The answer next contained a general denial of the allegations of the petition and alleged further that defendant was the owner and in possession through his tenant of an undivided one-half interest in the real estate described and that defendant claimed this undivided one-half interest in the land and prayed that plaintiff take nothing by her action and that the title of defendant to an undivided one-half interest in the described property be quieted. The reply was a general denial.

Upon these pleadings the case was submitted to the court and findings of fact were made. Passing over the findings which state the history of the transaction, the following findings are noted:

"7. The evidence discloses that after the death of Mrs. Fulton, W. L. Fulton discussed with many persons in and around Onaga the proper method of disposing of his property and sought the advice of two lawyers at different times in regard to this matter.

"8. The evidence discloses that after the death of Mrs. Fulton in 1933 said W. L. Fulton stated to different persons at different times that Doctor Leinbach, the defendant herein, was his favorite nephew, and that he desired him to have his property, and that after June, 1934, the said W. L. Fulton stated to different persons at different times that he had deeded his property to Doctor Leinbach, the defendant.

"9. Although the evidence is conflicting, the court finds from a preponderance of the evidence, that on June 28, 1934, at the time of the execution of the deed in controversy, the said W. L. Fulton was of sound mind and memory, and that he knew the effect of his act when he signed the deed in controversy, and that the same was not procured as a result of undue influence, fraud or deceit, exercised upon him by the defendant, and that said deed was delivered to the defendant immediately after the execution of the same, and that the said W. L. Fulton, at the time, intended to and did part with all right, title and interest in and to the real estate involved herein."

Based upon the above findings, the court concluded as a matter of law that the deed to defendant was valid and quieted the title of defendant to the real estate in question against any claim made by plaintiff.

The plaintiff filed a motion to set aside the judgment and decision and to render judgment for the plaintiff for the reason that the undisputed evidence showed that the deed executed by W. L. Fulton to the defendant was null and void. The plaintiff also filed a motion to set aside findings Nos. 7, 8 and 9, above set out, for the reason that finding of fact No. 7 was not supported by any evidence and Nos. 8 and 9 were contrary to the weight of the evidence. These

motions were both denied and the motion of plaintiff for a new trial was denied. Judgment was entered in accordance with the findings of fact and the conclusions of law set out.

At the outset it may be said that plaintiff admits in her brief that there was evidence on both sides as to the soundness of Mr. Fulton's mind at the time the deed was executed, and that since the court found against the claim of plaintiff on that question the point is not urged here as ground of error. The first ground urged by plaintiff to set aside the deed is that it was obtained by fraud and undue influence. It will be noted that the court found that the deed was not procured as a result of undue influence, fraud or deceit. If there is any evidence to sustain such a finding it will not be disturbed by this court on appeal.

The evidence on behalf of plaintiff briefly was that Mr. and Mrs. Fulton had made their home with plaintiff since 1916, and that the real estate in question constituted about all his estate; that both Mr. and Mrs. Fulton were fond of their daughter, the plaintiff, and appreciated the great sacrifice she had made for their comfort and enjoyment; that for the last two years prior to his death Mr. Fulton was in feeble health and his mind became weak; that he was unable to transact any business except occasionally going to Topeka to a store and giving some directions regarding the disposition of crops on his farm; that he never went away from home by himself; that he was always in the care of some other person; that during the last years of his life he made two or three trips to Onaga, where he visited his sister, the mother of defendant. There was some testimony that when in Onaga during the last two or three years of his life he was able to go alone, climb the stairs to defendant's office and converse intelligently. During these last two years there was some evidence of his having lost his sense of propriety and proper conduct as to his personal habits; that there were various other details shown as to the feebleness and mental condition of the old gentleman, which will not be detailed here.

The evidence showed that on or about June 28, 1934, which was about six months before Mr. Fulton's death, defendant came to the home of plaintiff and invited Mr. Fulton to take a ride with him; that they returned about 9:30 in the evening and defendant drove away without coming into the house; that about 7:30 that evening Leinbach had appeared at the village of Berryton, where he inquired at a store there if the proprietor was a notary public. The

evidence was that he was told that the proprietor was not a notary and that his commission had expired, whereupon he was invited to sit down, to which he answered in substance that he had an old man in the car who was going to give him a deed to his farm and he wanted to get his signature before he changed his mind. The evidence was that he was then told that a lady at Pauline was a notary and that Leinbach came to her store on that day between six and eight o'clock the same evening and stated to her that he had an old man who wished to have a paper notarized; that she took a pen, ink and cardboard out to the car; Leinbach handed her a deed; that she placed the deed on the cardboard and held it while the old man signed his name; that before he signed it she said, "Do you know what you are doing?" and he said, "Yes." After it was signed, without being read by Fulton or his being told what it was, she took it back to the store and affixed her certificate and seal. She asked her husband and a friend to sign as witnesses. After they signed the deed she took the deed back to the car and offered it to the person who had signed it and he said, "Give it to Doc."

Something is made in the record out of the fact that the deed bore the date of June 28, while the witnesses testified that the transactions testified about happened April 28, 1934. This is explained in substance by the court reporter as a mistake in transcribing his notes. We are unable to see how it has any effect upon the final result.

The evidence further was that on the 8th day of August, 1934, the tenant of the land went to the home of Mrs. Richard and talked to her and Mr. Fulton about disposing of his crops. It should be noted that this date was after the date of the execution of the deed that has been referred to; that Mr. Fulton told him what he wanted done with his share of the crop and that Mrs. Richard consented thereto; that neither Fulton nor defendant told either the tenant or the subtenant or Mrs. Richard that Mr. Fulton had made the deed referred to; that neither the tenant nor Mrs. Richard knew of the conveyances until January 24, 1935; that on that date Leinbach wrote a letter to the tenant informing him that he was joint owner of the land.

Upon evidence substantially as set out herein the plaintiff asks this court to overturn the findings of the trial court that this deed was not obtained by fraud and undue influence. On the other side of this question there was considerable evidence introduced in be-

half of plaintiff that Mr. Fulton regarded defendant as his favorite nephew; that he intended to give him the land in question at his death and that he consulted with different people as to the best way to do this, whether to do it by will or by deed.

Plaintiff argues that defendant stood in confidential relationship to Mr. Fulton and on that account the law presumes undue influence and fraud, and the burden rested upon the defendant to prove that the gift was made upon independent advice given to Mr. Fulton.

Some decisions of this court are cited in which it was held that a conveyance should be set aside where it appeared that it was made to one who stood in confidential relationship to the grantor and where the grantor did not receive any independent advice about the matter. We have examined those cases and have concluded that they are not in point here. In the first place, it does not appear that the relationship of defendant to Mr. Fulton was of such a nature that it could be called confidential, as the term is used in those opinions. There is also evidence in this record that Mr. Fulton visited defendant occasionally when he was in Onaga visiting his sister, the mother of defendant. In addition to that there is evidence that Mr. Fulton stated on more than one occasion that defendant was his favorite nephew and that he intended to give defendant the land. On at least two instances he talked to lawyers about how best to do this. Under all the circumstances we have concluded that this is not a case where the grantee stood in a position of confidential relationship to the grantor nor does it permit a conclusion that the deed was made by the grantor without his having independent advice.

Plaintiff next argues that Mr. Fulton did not intend for defendant to go into possession of the land immediately on the delivery of the deed, and for that reason the conveyance was of no effect. In this connection it is pointed out that after the delivery of this deed to defendant Mr. Fulton exercised dominion and control over the land in question by making some arrangements with his tenant with regard to rent. The answer to this contention is that this court has held that where a deed was delivered to the grantee there has been an effective delivery. (See *Norton v. Collins,* 81 Kan. 33, 105 Pac. 26.) In this case the deed was delivered directly to the grantee, although not recorded until after the death of the grantor.

In *Small v. Small,* 99 Kan. 321, 161 Pac. 598, the consideration was "$1 and love and affection." The deed was not recorded until

after the death of the grantor. For about six years from the time of the execution of the deed until the death of grantor he received rent from the farm. The deed was recorded after the death of the grantor. When the question of the delivery of this deed was raised this court said:

"The circumstantial evidence touching the subject of proprietorship of the farm did no more than furnish a basis for conjecture. ˙ The belief is quite common that a deed delivered before death, but accompanied by some arrangement reserving beneficial use until death, is a better way of disposing of property than by will. The grantees of Bowen Small were his children and grandchildren, and the circumstances that the one who occupied and farmed the place paid rent, and permitted stock to be kept there, were insufficient to warrant the court in making a positive finding of nondelivery." (p. 322.)

To the same effect is *Elliott v. Hoffhine,* 97 Kan. 26, 154 Pac. 225; also, *Withers v. Barnes,* 95 Kan. 798, 149 Pac. 691.

To the same effect is the general rule, as follows:

"The general rule is that a gift of property evidenced by a written instrument executed by the donor is consummated by a delivery of the instrument without a manual delivery of the property. . . . Likewise the execution and delivery of a deed to land is a completed execution of a gift of the land." (28 C. J. 637.)

We find nothing in this record that would warrant us in reaching a different conclusion than was reached by the trial court.

The judgment of the trial court is affirmed.