William H. HACKETT, Bernice Peck, Albert Hackett, Maxie Searcy, and William H. Hackett, Administrator of the Estate of May P. Hackett, Deceased, Plaintiffs in Error,

v.

J. B. HACKETT and Mable Hackett, Defendants in Error.

No. 41168.

Supreme Court of Oklahoma.

May 9, 1967.

As Corrected May 22, 1967.

Rehearing Denied June 13, 1967.

Yonne P. McDaniel, Mangum, for plaintiffs in error.

Garrett & Garrett, Mangum for defendants in error.

PER CURIAM:

Under review is the trial court's decree refusing to cancel a deceased mother's deed to her adult son and his wife. The appellants are decedent's other surviving children—two sons and two daughters—one of whom appears also as an administrator of her estate. Error is urged in adjudging that the mother's deed to the grantee-son *was* delivered to him during her lifetime and *did* operate to pass title to him inter vivos. Complaint is also made of the trial court's finding that the mother *did not* lack mental capacity to make the disputed conveyance when she executed it.

This was a suit to cancel an instrument of conveyance. It is one of equitable cognizance. Yarbrough et al. v. Bellamy, 197 Okl. 493, 172 P.2d 801. Although on appeal of an equity case the duty devolves on this court to re-weigh the evidence in the

record which bears upon the disputed fact issues to be reviewed, we do not consider ourselves free to disturb the lower court's decree unless it is found to be against the clear weight of the evidence. Lanford v. Cornett, Okl., 415 P.2d 984, 987.

The salient facts adduced in support of the plea for cancellation of the deed are:

The mother was a widow who lived alone since her husband's death in January 1959. She owned her home, rental property, a 160-acre farm and an appreciable amount of government bonds. She died intestate January 12, 1963, when she was slightly over 80 years of age. The deed sought to be cancelled, executed by her on September 4, 1962, appears to have been acknowledged the same day. It conveys her 160-acre farm to one of her sons and his wife as joint tenants. After the mother's death the deed, unrecorded, was found among other papers in her lock box at the bank. It was recorded by the grantees on January 21, 1963. A letter dated and signed by the mother the day she executed the deed was also contained in her lock box. So far as pertinent here, that letter states that she "had deeded" her farm to the grantee-son and his wife "as my own free will" because they (the grantees) "have been here with me in my latter life, they have taken care of me, they have cleaned my house, and looked after me in every way and in kindness and with love". The day she executed the deed she gave her grantee-son the right of unlimited access to her lock box (where the deed was found after her death). This she accomplished by signing a form "appointment of deputy" which was provided for that purpose by the bank. The records of the vault department at the bank reveal that the mother had not entered her lock box since the day she executed the deed; her grantee-son did gain access to the box September 19, 1962 (some 15 days after the deed was executed) and on January 16, 1963 (some 4 days after her death). Upon the latter occasion he removed the box and took it to the deceased mother's home to be opened in the presence of all the children who assembled there after the funeral.

He there took out of the box the mother's deed to him and his wife and the letter she wrote the day she executed the conveyance, showed these papers to his brothers and sisters and said to them: "I know this ain't right, but it is what mother wanted." After executing the deed in question the mother continued to pay taxes on the farm and to receive the rents paid by the tenant. According to some witnesses, her habits underwent a change and she began to suffer from lapses of memory in late June or early July, 1962—the year she made the conveyance sought to be cancelled.

The pertinent facts adduced by the grantees in opposing the plea for cancellation of the deed are:

The mother executed the deed in question at her bank in Granite the day which that instrument bears (September 4, 1962). She left her home about 10:00 o'clock that morning and asked her grantee-son to take her to the post office and to the city hall. In the forenoon of that day she came to the bank accompanied by the grantee-son who left soon afterwards and was absent when the deed was prepared and signed. She asked her banker " * * * to write a letter for her, and to write a deed." The banker prepared the deed in question (and another deed conveying her home to a daughter and her husband) and she signed it while sitting at his desk. He acknowledged the deed as a notary public and, "at her request and direction", he typed for her a statement (explaining the reason for these two conveyances), putting in it what she " * * * told (him) to put in it." She then signed the statement before the grantee-son rejoined her. The banker did not remember whether he handed the deed in question to the mother or to the son, upon the latter's return, but he did recall giving the statement to the mother. He further related that while at the bank that day " * * * and as a part of the same event" the mother signed a form instrument giving her grantee-son the power to enter her lock box.

According to the grantee-son, the banker "handed both of the deeds to her" (mother)

and she handed the deed in question to the grantee-son who then folded it and "put it in the mother's bank box", saying "I am busy today and can't complete this, I want to leave it (the deed) here for the time being". After the mother executed the deed in question she gave to the grantee-son the keys to her lock box and he kept them in his possession until she passed away. He never did "take time" to record mother's deed during her lifetime.

According to the banker who had known her since 1936, and who "would see her once every ten days", mother was a "very" good business woman who remained mentally alert, and there was nothing that made her appear "abnormal", "irregular" or "deficient". Several neighbors and acquaintances also testified that they had not noticed "anything abnormal or deficient" about mother's mental condition. The physician who examined and treated her as late as July, 1962, found her to be "very well oriented" and in fairly good health for her age. In September 1962, shortly after the deed in question was executed, a family reunion was held. It was attended by all members. At that time the apparent consensus was that mother was sufficiently alert to continue to live alone.

■ The test of capacity to make a deed is based on the grantor's ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. "He may be old; he may be enfeebled by disease; he may be erratic, irritable, and changeable in his views; he even may be irrational upon some topics, but, in the absence of fraud, he may still execute a valid deed." Scott v. Scott, 131 Okl. 144, 268 P. 245. A grantor is presumed to possess mental capacity sufficient to effect a valid conveyance. The burden of proving want of such capacity is cast upon the party asserting it. Antle v. Hartman et al., 193 Okl. 524, 145 P.2d 756, 757.

■ The only showing made to support the claim of mother's mental incapacity consists of fragmentary evidence as to isolated episodes indicating failing memory. In this posture of the record we are unable and unwilling to say that the trial court's finding in this regard does not accord with the clear weight of the evidence. Antle v. Hartman, supra.

■ The burden rests on the party disputing the delivery of the deed to establish want of delivery. Abrams v. Neal, Adm'r., 178 Okl. 158, 61 P.2d 1103; Wasson v. Collett, 204 Okl. 360, 230 P.2d 258; Chapman v. Chapman, Okl., 400 P.2d 831.

While it is impossible to state in exact terms what shall or shall not constitute a delivery of a deed, as a legal term, "delivery" of a deed imports *that possession, or the right to possession, of the instrument,* which is in other respects complete, has passed from the grantor to the grantee with intent to pass title as a present transfer. 23 Am.Jur.2d, Deeds, Sec. 78, p. 131.

■ No particular form or ceremony is necessary to effect a delivery of a deed. It may be by acts without words or by words without acts, or both. Manual transfer of a deed by the grantor to the grantee is not essential. See annotation in 129 A.L.R. 11. Anything which presently manifests the grantor's intention that the deed shall presently become operative and effectual to pass title and that by it the grantee becomes vested with the estate conveyed constitutes a sufficient delivery. The controlling factor is the intention of the grantor to make delivery. This intention may be inferred from the circumstances preceding, attending and subsequent to the execution of the instrument. Kilgore et al. v. Parrott, 197 Okl. 77, 168 P.2d 886; Bollenbach v. Bollenbach, 174 Okl. 174, 49 P.2d 771, 774; O'Neal v. Turner, 197 Okl. 527, 172 P.2d 1013; 23 Am.Jur.2d, Deeds, Secs. 78, 91 & 109, pgs. 131, 141 & 158.

■ A freehold estate may be effectively conveyed by deed in praesenti without a concurrent or immediate transfer of possession. If by delivery of the deed inter vivos title does pass in praesenti, grantee's failure or inability to take possession immediately, or until after grantor's

death, is not fatal to the vesting in grantee of a present interest in land. Lanford v. Cornett, Okl., 415 P.2d 984, 986; Nobell v. Town of Beaver, 133 Okl. 247, 271 P. 420; White v. Wester, 170 Okl. 250, 39 P.2d 22; see also, Pass v. Stephens, 22 Ariz. 461, 198 P. 712, 714. A corollary of this rule is that a grantor's continued possession and control of the property conveyed by him will not operate to defeat the legal consequence of an actual delivery of the deed of conveyance. Shintaffer v. Rorem, 167 Okl. 647, 31 P.2d 559; In re Griffin's Estate, 199 Okl. 676, 189 P.2d 933; McKeever v. Parker, 204 Okl. 1, 226 P.2d 425. In other words, grantor's failure to relinquish possession and control of property conveyed during his lifetime is insufficient to destroy the legal consequences of his prior delivery. Chapman v. Chapman, supra; Yarbrough v. Bellamy, supra. In this regard, one of the factors to be considered is not whether the grantor has retained possession or control of the property, but rather, whether he has retained possession or control of the deed. In re Hulteen's Estate, 170 Kan. 515, 227 P.2d 112, 115; Richard v. Leinbach, 146 Kan. 210, 69 P.2d 674; 26 C.J.S. Deeds § 42c, p. 687; see also, Severson v. First Baptist Church of Everett, 34 Wash.2d 297, 208 P.2d 616, 627. At least one court has concluded that grantor's retention of the incidents of management of the land conveyed by him is not inconsistent with the present passage of title, particularly in a parent-son relationship. Corkins v. Corkins, 358 Mich. 691, 101 N.W.2d 362, 87 A.L.R.2d 783; see also, Fisher v. Pugh, Okl., 261 P.2d 181, 186.

■ We have no difficulty agreeing with the trial court that the deed in question was delivered to the grantee-son the day it was executed. Even without the son's testimony that his mother had handed him the deed at the bank the day she executed it, there is here sufficient clear and convincing evidence as to the delivery of that instrument. The mother's written statement, coupled with her act of giving to him the keys to her lock box and the power to

enter it, serve as eloquent proof of her intention to pass title to the farm in praesenti. The fact that the mother did continue to be a nominal tenant of the lock box does not, in the absence of any evidence that she did so in order to retain control of the deed, negative the factum of delivery. Hoard v. Jones et al., 119 Kan. 138, 237 P. 888; Steuerwald v. Steuerwald et al., 195 Wis. 589, 219 N.W. 426; see also, Shaffer v. Smith et al., 53 Okl. 352, 156 P. 1188.

Lastly, we are urged that the trial court erred when it changed its original ruling and "considered as evidence in the case" the testimony of the grantee-son concerning the transaction with his mother. The admission of such testimony is asserted to be in violation of 12 O.S.1961, § 384, popularly called the "Dead Man's Statute".

■ The inhibition contained in the cited statute is directed against persons *asserting* a cause of action, title to which was acquired immediately from a deceased person, and not against those who are called upon to *make their defense* to such cause of action. The argument that the grantees herein are in the same position as one who asserts a cause of action acquired immediately from the deceased mother is untenable. The grantees were not asserting a cause of action. They had none to assert. Title to the farm was in the grantees. They had no claim or demand against the estate, nor were they attempting to enforce one. They were therefore competent to testify as to their transactions with the deceased mother in defense to the plea for cancellation of the deed. Watson v. Johnson, Okl., 411 P.2d 498, 503; City National Bank & Trust Company v. Conrad, Okl., 416 P.2d 942, 945; Blanchard v. Gordon, Okl., 418 P.2d 678, 681; Livingston v. Bonham, Okl., 308 P.2d 657.

Moreover, as we view the record, there was other evidence sufficient to establish delivery of the deed during the lifetime of the mother.

The trial court's decree is in accord with the clear weight of the evidence.

Affirmed.

The court acknowledges the services of George Bingaman, who with the aid and counsel of Jayne N. Montgomery and Henry H. Montgomery, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the court. The Chief Justice then assigned the case to McINERNEY, J., for review and study, after which and upon consideration by the court, the foregoing opinion was adopted.

JACKSON, C. J., and IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, HODGES, and McINERNEY, JJ., concur.

BERRY and LAVENDER, JJ., concur in result.